**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Geiger, et al., | No. CV-18-01443-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Creative Impact Incorporated, | |
| Defendant. | |

Pending before the Court are the parties' *Daubert* motions to exclude certain expert witnesses. (Doc. 66; Doc. 69; Doc. 70). The Court now rules.[1]

**I.   BACKGROUND**

Plaintiffs Brenda Geiger, CJ Gibson, Jessa Hinton, Jessica Killings, and Rosa Acosta assert three claims against Defendant Creative Impact Incorporated: (1) false light invasion of privacy under Arizona law, (2) misappropriation of likeness under Arizona law, and (3) a Lanham Act claim pursuant to 15 U.S.C. § 1125(a).[2] (Doc. 1-1). The basic

---

[1] Plaintiffs request oral argument on Defendant's *Daubert* motions (Doc. 66; Doc. 70). (Doc. 80; Doc. 81). The request for oral argument is denied because the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2019 WL 1099882, at *1 n.1 (D. Ariz. Mar. 8, 2019). Plaintiffs also belatedly sought oral argument in their Reply (Doc. 91) to their motion to preclude testimony by Dr. Michael Einhorn (Doc. 69), and thus, it is denied. LRCiv 7.2(f). To the extent the Court considers the request, it finds that oral argument would not have benefited the Court's decisional process as the issues have been fully briefed.

[2] Though Plaintiffs assert their claim as one Lanham Act claim, there are actually two distinct claims: false association and false advertising. (Doc. 1-1 at 16–19; Doc. 73 at 15;

underlying and undisputed factual context is as follows. Defendant operates a strip club in Phoenix, Arizona. (Doc. 1-1 at 6; Doc. 73 at 2; Doc. 76 at 3). Plaintiffs were previously or are currently models. (Doc. 1-1 at 1–2; Doc. 73 at 4–10; Doc. 76 at 1–3). Defendant posted images of Plaintiffs in flyers that were posted online via social media. (Doc. 1-1 at 2; Doc. 73 at 3; Doc. 76 at 3, 15; Doc. 76-3 at 2–24 (examples of the flyers)). All of these images were from past photoshoots of Plaintiffs. (Doc. 70 at 7; Doc. 70-1 at 19; Doc. 73 at 3–10). The flyers indicated that certain events were occurring at Defendant's strip club (such as drink specials). (Doc. 73 at 3; Doc. 73-2 at 31; *id.* at 2–28 (flyers); Doc. 76-3 at 2–24 (same)). Plaintiffs assert that the use of Plaintiffs' images implied that Plaintiffs were strippers at the Defendant's strip club or at least that they were affiliated with or promoted the strip club in some way. (Doc. 1-1 at 2–3; Doc. 76 at 3; Doc. 79 at 2–3).

## II.     LEGAL STANDARD

A party seeking to offer expert testimony must show that the testimony meets the requirements under Federal Rule of Evidence 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Trial judges fill their role as gatekeepers by making a preliminary assessment on whether expert testimony is admissible. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 597 (1993). Specifically, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. To satisfy Rule 702, the expert must be qualified, the expert's

Doc. 79 at 12–18). That clarification, however, does not affect the Court's decision on the pending Motions (Doc. 66; Doc. 69; Doc. 70).

- 2 -

opinion must be reliable in that it is based on sufficient facts or data and is the product of reliable principles and methods, and the expert's testimony must fit the case such that the expert's opinions are relevant. *See id.* The Rule 702 inquiry is "a flexible one" and its "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

Rule 702's requirements are conditions for determining if expert testimony is admissible. *Daubert*, 509 U.S. at 592–93 & n.10; *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). Thus, Federal Rule of Evidence 104(a) requires that the party offering the expert testimony show by a preponderance of the evidence that the expert testimony is admissible under Rule 702. *See* Fed. R. Evid. 104(a); *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## III.   ANALYSIS

As noted, Plaintiffs and Defendant have filed *Daubert* motions (Doc. 66; Doc. 69; Doc. 70). The Court takes each in turn.

### a.   Defendant's *Daubert* Motions

Defendant moves to preclude testimony from Plaintiffs' experts Martin Buncher ("Buncher") and Stephen Chamberlin ("Chamberlin"). (Doc. 66; Doc. 70).

#### 1.   Buncher

Defendant challenges the admissibility of Buncher's expert testimony. (Doc. 66). Buncher conducted a survey that "explore[d] possible confusion among consumers exposed to [Defendant's] advertising in terms of what they understood about the women' [sic] appearances in the Internet advertising material." (Doc. 66-1 at 30). Buncher also compiled a report that summarizes his opinions. (Doc. 66-1). Defendant asks the Court to preclude both. (Doc. 66 at 1).

##### A.   Reliability

Defendant first challenges the reliability of Buncher's survey and report. Survey evidence is sufficiently reliable where the survey was conducted according to accepted principles. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir.

1997); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992). An opponent's challenges regarding technical or methodological inadequacies do not show the survey evidence is unreliable but instead go to the weight of the survey evidence. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988).

Defendant makes four arguments that it asserts render Buncher's survey and report unreliable. The Court takes each in turn.

### i.     Lack of Control Group

Defendant first claims that Buncher's expert testimony must be precluded because he did not use a control group. (Doc. 66 at 6–8). Defendant cites no law for the proposition that a survey must be precluded as unreliable where there is no control group. This issue is one for the factfinder, not for the Court on a *Daubert* motion, as it is an asserted technical inadequacy that goes to weight, not admissibility. *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2019 WL 1977514, at *3 (S.D. Fla. Feb. 28, 2019); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1135 (C.D. Cal. 1998).

### ii.     Forced Responses and Guessing

Defendant next claims that Buncher's survey evidence must be precluded because the "use of yes/no questions is problematic as it is more likely to yield biased responses as [r]espondents are more likely to be agreeable and answer 'yes' than to answer 'no.'" (Doc. 66 at 8–9 (citing Doc. 66-2 at 6)). The principal support for this assertion is Defendant's rebuttal expert. (Doc. 66-2 at 6).

Again, this qualm has to do with an asserted technical inadequacy. "Challenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt*, 125 F.3d at 814 (citing *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982)) (reversing district court's refusal to admit survey evidence based on the district court's finding that it was "not a good survey"). For example, in *Prudential Insurance Co. of America*, the Ninth Circuit noted that while some courts

have precluded survey evidence based on "[t]echnical unreliability," such as where a survey "contained self-serving questions" and "failed to duplicate actual marketing conditions," it is "the better course" to allow a survey into evidence over such complaints as those issues relate to the weight the factfinder should give the survey evidence. *See Prudential Ins. Co. of Am.*, 694 F.2d at 1156. In other words, technical inadequacies in the survey, including the format of the questions or the manner in which it was taken, generally bear on the weight of the evidence, not its admissibility. *Keith*, 858 F.2d at 481 (affirming district court's decision to admit survey evidence despite opponent's complaints about "the clarity of the survey questions" as survey director testified in support of "the survey's objectivity" and that the "methods used were . . . in accord with generally accepted standards in the field"); *Medlock v. Taco Bell Corp.*, No. 1:07-CV-01314-SAB, 2015 WL 8479320, at *5 (E.D. Cal. Dec. 9, 2015) (stating that survey "wording goes to the weight of the evidence"). Buncher indicated that he conducted the survey in accordance with principles in the field and that the survey was designed to ensure "survey trustworthiness." (Doc. 80-1 at 3). Defendant's complaint regarding the questions asked of respondents goes to weight, not admissibility.

### iii. Forced Responses and Guessing

Defendant next argues that the "[s]urvey evidence should be excluded as [s]urvey questions were biased, poorly worded and made unsupported assumptions." (Doc. 66 at 9–10). Once again, this challenge is centered on the formatting and wording of the survey's questions, which is related to survey methodology; thus, it goes to weight, not admissibility. *See Medlock*, 2015 WL 8479320, at *5; *United States v. H & R Block, Inc.*, 831 F. Supp. 2d 27, 32 (D.D.C. 2011). Buncher states that the survey was conducted in conformity with principles in the field and the survey was designed to ensure "survey trustworthiness." (Doc. 80-1 at 3). The Court therefore rejects Defendant's argument. *See Keith*, 858 F.2d at 481.

### iv. Prior Exposure to Flyers

Defendant asserts that "the [s]urvey does not account for prior exposure to [f]lyers." (Doc. 66 at 11–12). Defendant elaborated in its Reply that respondents who had seen the flyers before "would be more likely to believe that the women had agreed to promote the [c]lub, work at the [c]lub and/or participate in events at the [c]lub," which would affect the survey's results. (Doc. 92 at 9). Defendant also asserts, in its Reply, that respondents who had been to Defendant's strip club before may have developed an opinion of it that would "influence[] their answers." (*Id.*). Defendant does not substantiate either claim.

The heart of Defendant's complaint goes back to its argument that Buncher's survey did not have an appropriate control, which Defendant itself acknowledges. (Doc. 66 at 11–12; Doc. 92 at 8). The fact that the survey did not control for prior exposure to the flyers is related to survey methodology, and it therefore goes to weight, not admissibility. *See Medlock*, 2015 WL 8479320, at *5; *Mattel, Inc.*, 28 F. Supp. 2d at 1135.

### v. Conclusion

The Court finds that Buncher's report and survey are admissible as they were conducted in accordance with accepted principles. Buncher's report includes a detailed explanation of his methodology and how his methods conform with accepted principles in the field. (Doc. 66-1 at 32–49). Moreover, Buncher is an expert—notably, Defendant did not challenge his qualifications, there is no indication that Buncher has any stake in the litigation (beyond being paid as most experts are), and there is no evidence that respondents were aware of the purposes of the survey. *Cf. Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1068–69 (C.D. Cal. 2002) (precluding survey evidence because survey had "substantial and fundamental" deficiencies as it was not conducted by experts, the recipients of survey "had a vested interest" in the result of the survey, and other recipients had an interest in refusing to return the survey); *G. v. Haw. Dep't of Human Servs.*, 703 F. Supp. 2d 1112, 1125–26 (D. Haw. 2010).

The only possible indicium of unreliability is that Buncher knew that the survey was for this litigation, and particularly, he was asked "to explore possible confusion among consumers exposed to [Defendant's] advertising in terms of what they understood about the women' [sic] appearances in the Internet advertising material." (Doc. 66-1 at 30); *cf. G.*, 703 F. Supp. 2d at 1125–26 (finding survey was not reliable because surveyor was not an expert, survey was not conducted independent of lawyers, surveyor knew "of the connection between the survey and the litigation," and that respondents were likely aware "that the survey was part of an advocacy effort directed against [defendants] as opposed to an impartial attempt to obtain information" based on the surveyor's articulation of the survey's purpose). Although some believe it is ideal that the surveyor remain ignorant of the purpose behind the survey, knowledge of the survey's purpose does not render the survey necessarily unreliable as some level of attorney involvement can be required to ensure the survey is "legally and factually relevant."[3] *See United States v. S. Ind. Gas & Elec. Co.*, 258 F. Supp. 2d 884, 894 (S.D. Ind. 2003). At any rate, Defendant can probe any technical inadequacies on cross-examination.

In short, Plaintiffs have shown by the preponderance of the evidence that Buncher conducted his survey and rendered his report in accordance with accepted principles in the field. *See Taylor*, 2019 WL 1977514, at *3 (finding that Buncher's survey evidence

---

[3] Indeed, the Court was unable to find a single case where any expert had been precluded from testifying solely due to knowledge of the litigation prior to drafting the survey. The assertion that it is "ideal" that a surveyor is "unaware of the purposes of the survey or the litigation" is usually credited to a case decided by the Third Circuit. *Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir. 1978). First, the Court notes that the Third Circuit referenced an ideal, not a prerequisite, to admissibility of survey evidence. If anything, that alone shows that the surveyor's knowledge of the litigation goes to weight, not admissibility unless there are other indicia of diversion from accepted practices in the field of surveying. But, even more problematic to this "ideal" is that it potentially trades reliability for relevance. As one court noted, "some level of attorney involvement in the design of a survey, preferably by attorneys from both sides, may be desirable rather than objectionable" as "[t]he goal is a legally and factually relevant survey." *S. Ind. Gas & Elec. Co.*, 258 F. Supp. 2d at 894. The only issue the Court can perceive from a surveyor's knowledge of the litigation is that the surveyor may slant the questions in favor of the party that hired the surveyor. But, this type of flaw goes to weight, not admissibility. *E. & J. Gallo Winer*, 967 F.2d at 1292; *see United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) (noting that evidence of expert bias goes to the expert's credibility). Accordingly, any issue relating to the fact that Buncher knew of the litigation before crafting his survey goes to the weight of his findings.

was reliable under similar circumstances). The Court notes the Ninth Circuit's admonition that "surveys in trademark cases are to be admitted as long as they are conducted according to accepted principles." *E. & J. Gallo Winery*, 967 F.2d at 1292. Accordingly, Buncher's expert testimony is reliable.

### B. Relevance

Defendant also challenges the relevance of Buncher's survey. (Doc. 66 at 12–17). Defendant once again merely takes aim at survey methodology. Defendant states that Buncher's survey failed to "test whether each [p]ublication and each [d]igital [f]lyer deceived or had the tendency to deceive a substantial segment of the audience." (*Id.* at 13). Defendant further takes issue with how the survey questions were framed and presented to survey respondents, such as that the survey showed multiple images rather than one at a time or that the survey did not provide a "don't know" option for whether respondents recognized who was in each flyer. (*Id.* at 12–17). As noted above, the formatting and wording of questions relates to survey methodology, which goes to weight, not admissibility. *Supra* Sections III(a)(1)(A)(ii), (iii); *see Keith*, 858 F.2d at 481; *Medlock*, 2015 WL 8479320, at *5; *H & R Block, Inc.*, 831 F. Supp. 2d at 32; *see also Taylor*, 2019 WL 1977514, at *3 (rejecting similar challenges to Buncher's survey evidence). Similarly, the fact that Buncher failed to include every image of the Plaintiffs in the survey is a criticism of the survey's methodology that can be explored at trial. *See Taylor*, 2019 WL 1977514. None of the asserted flaws Defendant points to indicate that the survey is not relevant.

In sum, the Court finds that Plaintiffs have shown that Buncher's testimony is relevant to the issues in this case. Expert testimony is relevant if it is "sufficiently tied to the facts of the case" such "that it will aid the jury in resolving a factual dispute." *See Daubert*, 509 U.S. at 591 (citation omitted). As noted above, Plaintiffs assert a false light claim, appropriation claim, and Lanham Act claim for both false association and false advertising. Buncher's survey evidence will at least be relevant as to whether the flyers imply that each of the Plaintiffs promoted or were associated with the Defendant's strip

club in some way, which is relevant to Plaintiffs' claims. Therefore, the survey evidence will help the jury decide relevant issues, and thus the survey evidence is relevant.

### C.  Conclusion

The Court will deny the *Daubert* motion seeking to preclude Buncher's expert testimony. (Doc. 66). "[S]urvey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *Fortune Dynamic, Inc.*, 618 F.3d at 1037 (second two alterations in original) (quoting *Wendt*, 125 F.3d at 814). The Court finds that Buncher's survey and report were conducted according to accepted principles in the field and that his testimony is relevant; therefore, Buncher's expert testimony is admissible.

### 2.  Chamberlin

Defendant also asks the Court to preclude testimony from Plaintiffs' expert Chamberlin. (Doc. 70). Chamberlin "examine[d] the use and/or alteration of their images, likenesses and identities by [Defendant] . . . and evaluate[d] and value[d] retroactively the compensation Plaintiff[s] would and should have received for the use of each [m]odel's image." (Doc. 70-1 at 57).

Defendant challenges the reliability of Chamberlin's expert opinion. (Doc. 70 at 5–14). "[T]he relevant factors for determining reliability will vary from expertise to expertise . . . ." *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. An expert's opinion can be based on "the application of extensive experience," which satisfies Rule 702(c)'s requirement that an expert opinion be based upon reliable principles and methods. *See id.* Lack of peer review, publication, or general acceptance of the expert's methodology is not dispositive when an expert's opinion is based on the application of extensive experience, as the expert's opinion is the product of the expert's experience—not science. *See Aloe Vera of Am. Inc. v. United States*, No. CV-99-01794-PHX-JAT, 2014 WL 3072981, at *11 (D. Ariz. July 7, 2014); *see also United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) ("Experiential expert testimony . . . does not 'rely on anything like a scientific method.'" (quoting Fed. R. Evid. 702 Committee Notes

on Rules—2000 Amendment)). Nonetheless, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment.

There is no doubt that Chamberlin has extensive experience as he has been an "an agent in the [m]odel and [t]alent industry" for the past thirty years. (Doc. 70-1 at 59, 65–66). Indeed, Defendant does not challenge Chamberlin's qualifications. (*See* Doc. 70).

Chamberlin based his calculation of Plaintiffs' damages on his valuation of the hypothetical negotiated price that Defendant would pay each of the Plaintiffs to use their respective image. (Doc. 70-1 at 57–58, 60–62). To determine that figure, Chamberlin calculated how much each of the Plaintiffs would receive for Defendant's use of their image based on a "day rate." (*Id.*). The day rate, according to Chamberlin, is the basis for all negotiations in the industry, which is the "base rate of compensation"—related to a variety of factors—"for the [m]odel['s] time on the day of the shoot." (*Id.* at 61–62). These factors include "a model/talent's desirability, . . . work history, . . . the embarrassment factor . . . and the type of exposure, or the '[u]sage.'" (*Id.*). Additionally, Chamberlin assumes each model would receive the same rate as the day rate for each usage of an image from the photoshoot, which typically comes with a time period in which the model's image may be used. (*Id.* at 61; *id.* at 109–10 (excerpt of *The White Book: A Guide to Model Fees*[4]); *id.* at 111 (chart for social media usage)). Chamberlin

---

[4] Defendant asserts that *The White Book* "is not reliable as it is a U.K. publication regarding recommendations for a trade association and does not include any data or method to determine valuations." (Doc. 70 at 12). Defendant does not develop this argument, and thus, the Court rejects it. *Braun v. Agri-Systems*, No. CV-F-02-6482 AWI SMS, 2006 WL 1328258, at *9 (E.D. Cal. May 16, 2006). Moreover, even if the Court examined the merits of this argument, it would fail. Defendant did not challenge Chamberlin's qualifications, and in any event, his extensive experience of thirty years in the modeling industry would be sufficient to qualify him as an expert. *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. An expert may rely on a publication that is a reliable authority in the expert's field. *See* Fed. R. Evid. 803(18); *Creach v. Spokane County*, No. CV-11-432-RMP, 2013 WL 12177099, at *3 (E.D. Wash. May 2, 2013). As Chamberlin's report and declaration indicate, *The White Book* reflects industry practice. (Doc. 70-1 at 61, 64; Doc. 81-1 at 11). To the extent Defendant objects to Plaintiffs' use of *The White Book*, such objection is overruled without prejudice to a future more well-developed objection.

reports that "[u]sage includes the way and method of use and distribution of images including but not limited to advertising, social media, third party promotion, branding, [b]illboard displays, coupons and more." (*Id.* at 60). In short, Chamberlin calculated the hypothetical negotiated price for Defendant to use Plaintiffs' images based on his review of the facts as to the Plaintiffs' careers as well as his extensive experience in the field. (*See id.* at 57–64)

Defendant responds that Chamberlin should not have used the day rate to determine Plaintiffs' damages, that he improperly calculated the day rate, that one publication should constitute one usage, and that his opinions are inconsistent with the record. (Doc. 70 at 5–14). At bottom, Defendant's challenges all relate to Defendant's disagreement with the assumptions Chamberlin made for purposes of his calculations. Yet, this argument goes to weight and not admissibility. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998); *see Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., concurring in part, joined by all other Members of the Court) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility."); *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005).

The Court finds Chamberlin's methodology is reliable as Chamberlin asserts his calculations and assumptions are based on his years of experience in the industry. *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-CV-2672-T-23TBM, 2017 WL 10591833, at *5–6 (M.D. Fla. Aug. 31, 2017) (concluding that a similar methodology that Chamberlin applied in a similar case was reliable). Chamberlin applied his extensive experience in the field of modeling to the facts of this case and rendered an opinion. *See Kumho Tire Co.*, 526 U.S. at 156 (stating an expert may "draw a conclusion from a set of observations based on extensive and specialized experience"); *see also* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment; *Aloe Vera of Am. Inc.*, 2014 WL 3072981, at *11. The proper vehicle for Defendant's challenges to Chamberlin's assumptions and any inconsistencies between his opinion and the record is on cross-examination. *Marsteller v. MD Helicopter Inc.*, No. CV-14-01788-PHX-DLR, 2018 WL

3023284, at *1–2 (D. Ariz. May 21, 2018); *Mcgarity v. FM Carriers, Inc.*, No 4:10-cv-130, 2012 WL 1028593, at *8 (S.D. Ga. Mar. 26, 2012) (stating a party "is free to identify flawed data or facts relied upon by an expert upon cross-examination, but such reliance at this stage does not render expert testimony inadmissible under *Daubert*"). The Court rejects Defendant's challenges relating to any perceived flaws in Chamberlin's methodology and finds that Chamberlin's calculations are sufficiently reliable to survive a *Daubert* challenge based on the application of his extensive experience to the facts of this case.

Plaintiffs have shown by the preponderance of the evidence that Chamberlin's methodology is reliable. The Court will deny Defendant's motion to preclude Chamberlin (Doc. 70).

### b.  **Plaintiffs'** *Daubert* **Motion**

Plaintiffs move to preclude testimony from Defendant's expert Dr. Michael Einhorn ("Dr. Einhorn"). (Doc. 69). Plaintiffs challenge Dr. Einhorn's qualifications, the reliability of his opinion, and the relevance of his opinions. (*Id.*). The Court takes each argument in turn.

#### 1.  **Qualifications**

Plaintiffs assert that Dr. Einhorn is not qualified to render an opinion in this case because he "has never negotiated a modeling or talent contract in his life." (Doc. 69 at 12). Plaintiffs also claim that Dr. Einhorn's "naïve and foundationless analysis could be offered only by an individual who lacks the most fundamental comprehension of the modeling industry and how contracts are negotiated, and valuations arrived at, therein." (*Id.* at 13).

Under Rule 702, the trial court must analyze whether the proffered witness is qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Rule 702 was not meant to supplant "the traditional and appropriate means of attacking shaky but admissible evidence," including "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."

*Daubert*, 509 U.S. at 596. Accordingly, "[t]he qualification standard is meant to be broad and to seek a 'minimal foundation' justifying the expert's role as an expert." *Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) (quoting *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)); *see also Hangarter*, 373 F.3d at 1015–16 (noting years of experience in the industry was sufficient to constitute "the *minimal foundation* of knowledge, skill, and experience required" by Rule 702). "Disputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony.'" *Kennedy*, 161 F.3d at 1231 (alteration in original) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

It is telling that nearly all of Plaintiffs' arguments relating to Dr. Einhorn's qualifications all relate back to Dr. Einhorn's methodology and conclusions. The epitome of Plaintiffs' argument is that Dr. Einhorn's "naïve and foundationless analysis could be offered only by an individual who lacks the most fundamental comprehension of the modeling industry and how contracts are negotiated, and valuations arrived at, therein." (Doc. 69 at 13). Defendant and Dr. Einhorn challenge Plaintiffs' assertion that Dr. Einhorn lacks "comprehension of the modeling industry." In fact, Dr. Einhorn states he has "provided valuation services in the areas of intellectual property, media, entertainment, technology, trademarks, publicity rights, and product design since 2001," including "lawsuits involving over 135 models who have alleged right of publicity claims for unlawful use of their image" and that he has published on these topics. (Doc. 84-3 at 11; *see also* Doc. 69-2 at 5–6; *id.* at 10; *id.* at 25–51 (Dr. Einhorn's curriculum vitae)).

In any event, even if Plaintiffs are correct about Dr. Einhorn's lack of experience in the modeling industry, Plaintiffs' complaint goes to the strength of Dr. Einhorn's credentials—i.e., that they assert he has no experience in the modeling industry, and thus, the weight of his testimony, not its admissibility. *Kennedy*, 161 F.3d at 1231; *Abu-Lughod v. Calis*, No. CV132792DMGGJSX, 2015 WL 12731921, at *2 (C.D. Cal. July 1, 2015) (rejecting argument that economist was not qualified to testify as a result of having no experience in a particular niche industry because economist had thirty years of

experience in valuation of intellectual property). Indeed, Dr. Einhorn has about nineteen years of experience testifying as a valuation expert and has published on the topic. (Doc. 69-2 at 25–51 (Dr. Einhorn's curriculum vitae); Doc. 84 at 9–10; Doc. 84-3 at 10–12).

The Court finds that Dr. Einhorn's years of experience providing valuation services in various industries, including intellectual property, is sufficient to satisfy the "minimal foundation" required by Rule 702. *See Hangarter*, 373 F.3d at 1015–16. Defendant has met its burden of showing Dr. Einhorn is qualified to testify on the valuation of Plaintiffs' damages.

### 2. Reliability

Plaintiffs next challenge the reliability of Dr. Einhorn's opinion. (Doc. 69 at 15–17). "[T]he relevant factors for determining reliability will vary from expertise to expertise . . . ." *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. When an expert's opinion is based on the "application of extensive experience," it is based on reliable principles and methods. *See id.* Further, where the expert has applied her extensive experience, a lack of peer review, publication, and general acceptance in the field is not dispositive because the expert's opinion is the result of the expert's experience, not science. *See Aloe Vera of Am. Inc.*, 2014 WL 3072981, at *11; *see also Wilson*, 484 F.3d at 274 ("Experiential expert testimony . . . does not 'rely on anything like a scientific method.'" (quoting Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment)). Even so, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment.

Just like Defendant's challenge to Chamberlin, the crux of Plaintiffs' challenge to Dr. Einhorn is that Plaintiffs do not agree with Dr. Einhorn's methodology. At bottom, Plaintiffs reject Dr. Einhorn's assumption that damages are equal to the amount Plaintiffs could receive for selling a license to a particular image taken at a photoshoot. (Doc. 69-2 at 9–11, 14, 19–23). Therefore, Plaintiffs' challenge only reflects disagreement with the

assumptions Dr. Einhorn made for purposes of his calculations, which goes to weight. *Dorn*, 397 F.3d at 1196; *Kennedy*, 161 F.3d at 1231. This issue must therefore be decided by the trier of fact.

Similarly, Plaintiffs' assertion that Dr. Einhorn has not explained what "'glamour model' contracts [he] relied on or what they have to do with Plaintiffs" is simply irrelevant to the reliability of his methodology. (Doc. 69 at 15); *see Vaughn v. City of Los Angeles*, No. CV1603086ABAJWX, 2017 WL 8786868, at *3 (C.D. Cal. Oct. 30, 2017); *Edmondson*, 2017 WL 10591833, at *6; *N.M ex rel. Saleem M. v. Cent. York Sch. Dist.*, No. 1:09-CV-00969, 2010 WL 11678364, at *3 (M.D. Pa. Sept. 2, 2010). Plaintiffs ignore the fact that Dr. Einhorn reviewed contracts they produced in discovery and that he has about nineteen years of experience in providing valuation services in the areas of intellectual property, media, entertainment, and publicity rights—which has included reviewing modeling contracts to valuate damages in lawsuits similar to this one. (Doc. 69-2 at 6–8, 13–14; Doc. 84-3 at 11–15). Any perceived fault in Dr. Einhorn's methodology—whether in his assumptions or calculations—can be explored at trial. *See Daubert*, 509 U.S. at 596.

The Court finds that Defendant met its burden of showing Dr. Einhorn's expert testimony is reliable.

### 3. Relevance

Finally, Plaintiffs assert that Dr. Einhorn's opinion is not relevant. (Doc. 69 at 17–18). Yet, again, it appears Plaintiffs' bluster reveals that their legal argument is not strong. The essence of their argument can be summed up in this sentence: "Simply put: why should the jury in this case be allowed to listen to [a] Ph.D. in economics testify about something a layman can do i.e., conduct a web search via Google?" (*Id.*). The Court need not belabor the point; as already articulated above, Dr. Einhorn's opinion was based on much more than "a web search via Google."

In any event, to be relevant, proffered expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *See*

*Daubert*, 509 U.S. at 591 (citation omitted). Plaintiffs do not develop why Dr. Einhorn's damages analysis is irrelevant. Instead, they again attack his methodology, including the facts he relied on and the assumptions he made. That argument does not work any better under the heading "relevance" as it does under the heading "reliability." *See Erickson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *5 (D. Ariz. Nov. 3, 2016) (rejecting argument that expert testimony was not relevant because expert used a particular methodology); *Aloe Vera of Am. Inc.*, 2014 WL 3072981, at *4–5 (noting that while expert's "inferences may be problematic, . . . that is an issue to be exposed upon cross-examination"). The parties disagree as to how to valuate Plaintiffs' damages, Defendant is entitled to offer its opinion on the issue and Plaintiffs can put it through the crucible of cross-examination. *Aloe Vera of Am. Inc.*, 2014 WL 3072981, at *4–5. In sum, Dr. Einhorn's expert testimony on Plaintiffs' damages is not irrelevant because it will aid the finder of fact in determining how much damages Plaintiffs incurred.

### 4. Conclusion

The Court finds that Dr. Einhorn is qualified, that his methodology is reliable, and that his opinion is relevant. Plaintiffs' Motion (Doc. 69) to preclude his testimony will therefore be denied.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Strike Plaintiffs' Expert Martin Buncher's Survey and Report and Motion to Exclude Testimony of Martin Buncher (Doc. 66) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant's Motion to Strike Plaintiffs' Expert Stephen Chamberlin's Report and Motion to Exclude Testimony of Stephen Chamberlin (Doc. 70) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike the Expert Report and Testimony of Michael Einhorn, Ph.D. (Doc. 69) is **DENIED**.

Dated this 17th day of June, 2020.

James A. Teilborg
Senior United States District Judge