**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Brenda Geiger, et al.,

               Plaintiffs,

v.

Creative Impact Incorporated,

               Defendant.

No. CV-18-01443-PHX-JAT

**ORDER**

Pending before the Court are the parties' cross-motions for summary judgment. (Doc. 73; Doc. 76). The Court now rules.

## I.     BACKGROUND

Plaintiffs Brenda Geiger, CJ Gibson, Jessa Hinton, Jessica Killings, and Rosa Acosta assert three claims against Defendant Creative Impact Incorporated: (1) false light invasion of privacy under Arizona law, (2) misappropriation of likeness under Arizona law, and (3) a Lanham Act claim pursuant to 15 U.S.C. § 1125(a).[1] (Doc. 1-1). The Court recently articulated the underlying factual context:

> Defendant operates a strip club in Phoenix, Arizona. (Doc. 1-1 at 6; Doc. 73 at 2; Doc. 76 at 3). Plaintiffs were previously or are currently models. (Doc. 1-1 at 1–2; Doc. 73 at 4–10; Doc. 76 at 1–3). Defendant posted images of Plaintiffs in flyers that were posted online via social media. (Doc. 1-1 at 2; Doc. 73 at 3; Doc. 76 at 3, 15; Doc. 76-3 at 2–24 (examples of the flyers)).

---

[1] As noted in a previous order (Doc. 96), although each of the Plaintiffs asserts claims under the Lanham Act, each of the Plaintiffs actually brought two distinct claims: false association and false advertising. (Doc. 1-1 at 16–19; Doc. 73 at 15; Doc. 79 at 12–18). The Court will take each in turn.

All of these images were from past photoshoots of Plaintiffs. (Doc. 70 at 7; Doc. 70-1 at 19; Doc. 73 at 3–10). The flyers indicated that certain events were occurring at Defendant's strip club (such as drink specials). (Doc. 73 at 3; Doc. 73-2 at 31; *id.* at 2–28 (flyers); Doc. 76-3 at 2–24 (same)). Plaintiffs assert that the use of Plaintiffs' images implied that Plaintiffs were strippers at the Defendant's strip club or at least that they were affiliated with or promoted the strip club in some way. (Doc. 1-1 at 2–3; Doc. 76 at 3; Doc. 79 at 2–3).

(Doc. 96 at 2).

## II.   LEGAL STANDARD

Summary judgment in favor of a party is appropriate when that party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated conversely, a party "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam).

The movant must first establish that there is no genuine dispute of material fact and that, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate the existence of any dispute of material fact. *Id.* at 323–24. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue of fact "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). Material facts are those "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075–76 (citation omitted). However, the nonmovant's bare assertions,

1    standing alone, are insufficient to create a material issue of fact that would defeat the

2    motion for summary judgment. *Anderson*, 477 U.S. at 247–48.

3         Plaintiffs and Defendant seek summary judgment here. (Doc. 73; Doc. 76). While

4    the summary judgment standard is articulated the same for plaintiffs and defendants alike,

5    it operates differently depending on which side of the "v." the movant is on. A plaintiff

6    must establish "beyond controversy" that it can show "every essential element of its" claim

7    based on the undisputed facts. *See S. Cal. Gas Co.*, 336 F.3d at 888. In contrast, a defendant

8    is entitled to summary judgment where it establishes that the plaintiff will be unable to

9    show at least one element of its claim in light of the undisputed material facts. *Celotex*

10   *Corp.*, 477 U.S. at 322–23. This distinction on summary judgment arises from the fact that

11   a plaintiff has the burden of proof on its claims while the defendant must merely show the

12   plaintiff cannot make out its prima facie case. *See id.*; *S. Cal. Gas Co.*, 336 F.3d at 888;

13   10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*

14   *Procedure* § 2727.1 (4th ed. 2016).

15   **III.   ANALYSIS**

16        As noted above, both sides move for summary judgment on every claim. (Doc. 73;

17   Doc. 76). The Court will analyze each claim in turn.

18        **a.    False Light Invasion of Privacy**

19        Defendant asserts two reasons why it is entitled to summary judgment on Plaintiffs'

20   false light invasion of privacy claim. First, Defendant claims that each of the Plaintiffs

21   cannot prove at least one element of her false light claim. (Doc. 73 at 11–13). Second,

22   Defendant contends that Plaintiffs Geiger, Gibson, and Hinton have brought their claims

23   outside of the statute of limitations, which entitles it to summary judgment on their false

24   light claims. (Doc. 73 at 10–11). Plaintiffs seek summary judgment as well, claiming that

25   the undisputed facts show they are entitled to judgment as a matter of law on each of their

26   false light claims. (Doc. 76 at 19–20).

27

28

1    **1.    Prima Facie Case**

2        Plaintiffs and Defendant each assert that the undisputed facts entitle that party to

3    judgment as a matter of law. (Doc. 73 at 11–13; Doc. 76 at 19–20). Neither party is correct.

4        Arizona has adopted the definition of a false light invasion of privacy claim that is

5    found in the Restatement (Second) of Torts. *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d

6    781, 784, 788 (Ariz. 1989). The Restatement (Second) provides:

7        One who gives publicity to a matter concerning another that places the other
8        before the public in a false light is subject to liability to the other for invasion
         of his privacy, if
9            (a) the false light in which the other was placed would be highly
             offensive to a reasonable person, and
10           (b) the actor had knowledge of or acted in reckless disregard as to the
11           falsity of the publicized matter and the false light in which the other
             would be placed.
12

13   Restatement (Second) of Torts § 652E (Am. Law Inst. 1977) [hereinafter Restatement

14   (Second)]; *see also Godbehere*, 783 P.2d at 784, 788 (recognizing false light claim under

15   Restatement (Second) § 652E). Here, there are disputes of material fact as to each of these

16   elements, which precludes the Court from granting summary judgment.

17       First, there is a triable issue as to whether being associated with Defendant's strip

18   club would be highly offensive to a reasonable person in each of the Plaintiffs' positions.

19   Indeed, the Arizona Supreme Court cited approvingly to a case from the Seventh Circuit

20   that resembles the case here. The court described the Seventh Circuit case, *Douglass v.*

21   *Hustler Magazine, Inc.*, as "[a] good example of a false light cause of action based on

22   implication." *Godbehere*, 783 P.2d at 787 n.2 (citing *Douglass v. Hustler Magazine, Inc.*,

23   769 F.2d 1128 (7th Cir. 1985)). In *Douglass*, the plaintiff had posed nude and consented to

24   be published in *Playboy* magazine. *Id.* (citing *Douglass*, 769 F.2d 1128). However, the

25   photographer who took the nude pictures ended his relationship with *Playboy* and sold

26   plaintiff's photographs—without her permission—to *Hustler* magazine. *Id.* (citing

27   *Douglas*s, 769 F.2d 1128). As the *Godbehere* court noted, there was no claim for

28   defamation as "there was nothing untrue about the photographs." *Id.* (citing *Douglass*, 769

F.2d 1128). But, as the *Godbehere* court recounted, the Seventh Circuit held that the jury could have concluded that being published in *Hustler* magazine cast plaintiff in a different light than being published in *Playboy* magazine, and it therefore upheld the jury's verdict on the false light claim. *See id.* (citing *Douglass*, 769 F.2d at 1138).

Similarly here, it is possible that the finder of fact will determine that associating Plaintiffs specifically with Defendant's strip club through Defendant's use of their images in the flyers would be highly offensive to the reasonable person in the Plaintiffs' positions. *See Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 ¶¶ 29–30 (Ariz. Ct. App. 2015) (affirming denial of judgment as a matter of law as "[t]he jury was in the best position to resolve . . . questions of material fact" as to whether publications painted the plaintiffs in a false light). Defendant's argument to the contrary, based on the proposition that "Plaintiffs commercialize themselves through the sexualization of their faces and/or bodies and have appeared in a variety of men's magazines," misses the mark. (Doc. 73 at 12). In fact, a similar argument was raised and rejected by the court in *Douglass* as the court concluded a reasonable jury could find that the plaintiff's nude shots appearing in *Hustler* magazine could cast her in a different light than being published in *Playboy* magazine. *Douglass*, 769 F.2d at 1136–38 (upholding verdict for plaintiff on false light claim despite *Hustler* magazine's argument that publication of the plaintiff actress's nude photos "could not be degrading to one who had posed nude for *Playboy*"). In other words, the fact that the plaintiff in *Douglass* posed nude did not foreclose plaintiff's false light claim there. *See id.*

The finder of fact could conclude the same here. Even if Defendant is correct that Plaintiffs have "commercialize[d] themselves through the sexualization of their faces and/or bodies," (Doc. 73 at 12), that fact does not necessarily mean Plaintiffs cannot show that the use of their images in Defendant's flyers is highly offensive. A reasonable person who engages in suggestive or even nude modeling could still be highly offended by the implication that they are strippers for a particular strip club or that they are affiliated with that strip club in some way.

1        That question must be decided by the finder of fact, especially considering that

2    Plaintiffs have evidence that indicates even the strippers at Defendant's strip club have

3    concerns about being publicly affiliated with it. (Doc. 79 at 11; *see also* 76-9 at 3). Further,

4    Plaintiffs assert that they would have never agreed to endorse Defendant's strip club.

5    (Doc. 76-4 at 4; Doc. 76-5 at 4; Doc. 76-6 at 4; Doc. 76-7 at 4; Doc. 76-8 at 4). It is true

6    that, in approximately 2012 and 2013, both Plaintiffs Acosta and Killings "hosted" for strip

7    clubs—which includes promoting the event they are hosting through use of their image—

8    and that Plaintiff Killings was a stripper herself until circa 2011.[2] (Doc. 73-2 at 186–87,

9    205–06, 209–11). But, it is up to the finder of fact to determine if Defendant's use of the

10   images of Plaintiffs Acosta or Killings painted them in a false light by specifically, and

11   much more recently, associating each of them with *Defendant's* strip club, including the

12   possibility that the flyers implied that each of them was a stripper at Defendant's strip club.

13   Strip clubs—like the adult magazines in *Douglass*—are not fungible and being associated

14   with a particular strip club approximately five years after Plaintiffs Acosta and Killings

15   promoted other strip clubs could be highly offensive to a reasonable person in their

16   positions.[3] That determination is simply not a finding that the Court can make on summary

17   judgment, especially in light of the fact that the Court must view the facts in Plaintiffs'

18   favor in analyzing Defendant's Motion (Doc. 73). The Court cannot say, as a matter of law

19   on this record, that Defendant's use of Plaintiffs' images would not be highly offensive to

20   a reasonable person in each of their respective positions.

21

22

---

23   [2] Plaintiff Killings did indicate that her past as a stripper has created difficulties for her
24   current marketing work. (Doc. 73-2 at 211 ("[I]t's been a huge hurdle for people to take
     me seriously. So when they think that—when people get reminded of that or they think that
25   I could be possibly still doing that, it does affect my work, or it affects the way that people
     treat me or just not listening to me or thinking I don't know what's going on.")). That fact
26   could support Plaintiff Killings's claim that a reasonable person in her position would be
     offended by Defendant's use of her image in its flyer.

27   [3] In fact, Plaintiffs' expert, Stephen Chamberlin, a thirty-year veteran of the modeling
28   industry noted "that a stigma is attached to products that are personal in nature, sexual,
     political, embarrassing or unhealthy." (*See* Doc. 70-1 at 60).

1    In fact, the Restatement (Second) provides a relevant and illustrative hypothetical:

2    A is the pilot of an airplane flying across the Pacific. The plane develops
3    motor trouble, and A succeeds in landing it after harrowing hours in the air.
     B Company broadcasts over television a dramatization of the flight, which
4    enacts it in most respects in an accurate manner. Included in the broadcast,
     however, are scenes, known to B to be false, in which an actor representing
5    A is shown as praying, reassuring passengers, and otherwise conducting
6    himself in a fictitious manner that does not defame him or in any way reflect
     upon him. Whether this is an invasion of A's privacy depends upon whether
7    it is found by the jury that the scenes would be highly objectionable to a
8    reasonable man in A's position.

9    Restatement (Second) § 652E illus. 9. The Court finds that this hypothetical is akin to the

10   case at bar. Defendant knew that Plaintiffs were not strippers at Defendant's strip club and

11   that they were not affiliated with the strip club in any way. (Doc. 73-2 at 32; Doc. 76-9 at

12   15–16). As in the hypothetical, for each of the Plaintiffs, the issue will turn on whether the

13   factfinder believes that Defendant's use of her image would be highly objectionable to a

14   reasonable person in her position. It is for this reason that summary judgment cannot be

15   granted for Plaintiffs as well.

16         Second, there is a dispute of material fact as to whether Defendant posted the flyers

17   with Plaintiffs' images with knowledge or reckless disregard for the truth (i.e., actual

18   malice).[4] *Miller v. Servicemaster by Rees*, 851 P.2d 143, 145 (Ariz. Ct. App. 1992); *see*

19   *Selby v. Savard*, 655 P.2d 342, 345 (Ariz. 1982) (in division) (stating that "actual malice'

20   means "with knowledge that [the publication] was false or with reckless disregard of

21   whether it was false or not" (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80

22   (1964))); *see also* Restatement (Second) § 652E. Whether a defendant acted with actual

23

24   ───────────────────
     [4] Plaintiffs do not "dispute" that they are public figures. (Doc. 79 at 8; Doc. 73 at 11–12).
     Plaintiffs nonetheless contend they need not show actual malice because they are not public
25   *officials*. (Doc. 79 at 8). That proposition is incorrect. The *Godbehere* court did draw a
     distinction based on a plaintiff's status as a public official. 783 P.2d at 789. But, that
26   distinction related to whether the matter published related to the public official's duties or
     public life. *Id.* If so, the court held there could be no false light claim. *Id.* On the other
27   hand, if the publication related to the public official's private life, the public official could
     make out a false light claim, but actual malice must be shown, just as with any other false
28   light claim. *Id.* In any event, Plaintiffs must still show actual malice as part of their prima
     facie case regardless of whether they are public figures. *See id.* at 788–89; Restatement
     (Second) § 652E.

1  malice is a question for the finder of fact unless there is no evidence to support a finding

2  of actual malice. *Miller*, 851 P.2d at 145. Actual malice may be inferred from the objective

3  facts. *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1084–86 (9th Cir. 2002) (finding, on

4  summary judgment, that actual malice could be proven by clear and convincing evidence

5  in false light claim where adult magazine published images of actor on cover despite doubts

6  that it would create the false impression that he appeared nude within the magazine).

7  　　Here, viewing the facts in Plaintiffs' favor, as the Court must in analyzing

8  Defendant's Motion (Doc. 73), there is a triable issue as to whether Defendant acted with

9  actual malice. As discussed, Defendant's flyers may imply that Plaintiffs are strippers at

10  the Defendant's strip club or that they endorse or somehow are affiliated with the strip club.

11  In fact, Plaintiffs' survey evidence indicates that purveyors of strip clubs and bikini bars in

12  the Phoenix area believed, after seeing a sampling of Defendant's flyers, that Plaintiffs

13  agreed to promote the club and eighty-seven percent of respondents believed that Plaintiffs

14  "might participate in some of the events and activities taking place at the club." (Doc. 66-

15  1 at 93–94). There is, however, evidence that supports that Defendant knew that Plaintiffs

16  did not work at Defendant's strip club and that they were not affiliated with the strip club

17  in any way. (Doc. 73-2 at 32; Doc. 76 at 4; Doc. 76-9 at 15–18). Yet, Defendant did not

18  inquire as to where the graphic designer got Plaintiffs' images or whether he had the rights

19  to use them until after litigation began. (Doc. 76-9 at 15–18; Doc. 79 at 9). After litigation

20  began, Defendant's manager questioned the graphic designer about where he got Plaintiffs'

21  images, and the graphic designer indicated he had gotten them for free. (Doc. 76-9 at 17–

22  18). Defendant's manager, who served as Defendant's corporate representative in

23  deposition under Federal Rule of Evidence 30(b)(6), noted the graphic designer's answer

24  "doesn't quite make sense." (*Id.* at 18). Actual malice can be inferred from these facts.

25  　　Nevertheless, Defendant asserts it is entitled to summary judgment on Plaintiffs'

26  false light claims because the graphic designer that created the flyers "believed that the use

27  of Plaintiffs' [i]mages was authorized." (Doc. 73 at 3, 12). The graphic designer asserts

28  that he got the images from a website. (Doc. 73-2 at 35–36). The graphic designer further

claims that he thought his use of Plaintiffs' images was authorized based on the website's marketing, which read:

> Official PSDs is a user-driven, community-oriented site where graphic artists of all skill levels can come together to share resources. These range from stock images to PSD cutouts of Musicians, Athletes, and every category in between. Use them in your banners, forum signatures, mixtape covers and personal projects!

(*Id.*). Nothing in that statement indicates that the website had the rights to any images of Plaintiffs that Defendant (or its employees) posted. Additionally, Defendant did not even ask the graphic designer about whether he had authorization to use the photos until this litigation began. (Doc. 76-9 at 15–18).

At any rate, consent is a question of fact that must be determined by the finder of fact as it is undisputed that Defendant did not have Plaintiffs' express consent. Restatement (Second) § 892 ("Existence of apparent consent is a fact issue . . . ."); *id.* § 892(b)–(c) (discussing "consent in fact" and "apparent consent"); *Kelly v. William Morrow & Co.*, 231 Cal. Rptr. 497, 503 (Ct. App. 1986). Defendant's contention that the graphic designer believed that there was a free and perpetual license for use of Plaintiffs' images must be evaluated by the trier of fact. *See Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100–01 (D. Ariz. 2006) (finding triable issue of fact where it was unclear if plaintiffs "had licensed the use of their names and likenesses in perpetuity"); *cf. Godbehere*, 783 P.2d at 787 n.2 (citing approvingly to Seventh Circuit case and noting, in that case, that plaintiff's consent to be published nude in one adult magazine did not defeat her false light claim against another adult magazine who published nude photos from the same photoshoot (citing *Douglass*, 769 F.2d 1128)). Indeed, "statements of . . . subjective intention are matters of credibility for the" finder of fact. *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1042 (9th Cir. 1998). There are triable issues as to whether there was apparent consent to use each of the Plaintiffs' images.

The Court also rejects Defendant's assertion that it should prevail on summary judgment because it did not intend to hurt Plaintiffs. (Doc. 73 at 12). That claim is

irrelevant. Instead, the question is whether Defendant acted with knowledge or reckless disregard as to whether the flyers were false or would create false innuendo regarding Plaintiffs. *See Godbehere*, 783 P.2d at 786, 788. As noted, there is evidence in the record to support such a finding, and thus, summary judgment for Defendant is inappropriate.

Finally, Defendant argues that Plaintiffs have not shown any evidence that "they suffered mental anguish manifested as a physical injury or other injury." (Doc. 73 at 13). But, a dignitary tort related to an invasion of privacy, such as a false light claim, does not require any proof of a physical manifestation of injury. *Havasupai Tribe of Havasupai Reservation v. Ariz. Bd. of Regents*, 204 P.3d 1063, 1077 ¶ 48 (Ariz. Ct. App. 2008); *see also* Restatement (Second) § 652H cmt. a. "[A] plaintiff may recover even in the absence of reputational damage, as long as the publicity is unreasonably offensive and attributes false characteristics." *Godbehere*, 783 P.2d at 787. Consequently, once a plaintiff establishes a false light claim, it is in the province of the finder of fact "to consider any actual damage to [a plaintiff's] reputation[] and/or any emotional damage or damage to sensibility." *See Desert Palm Surgical Grp., P.L.C.*, 343 P.3d at 450 ¶ 30. Because each of the Plaintiffs may be able to establish a prima facie false light claim on this record, the Court cannot grant summary judgment in favor of Defendant based on the issue of damages.

In short, there are genuine disputes of material fact as to Plaintiffs' false light claim. These disputes preclude granting summary judgment.

### 2.      Statute of Limitations

Defendant contends that Plaintiffs Geiger, Gibson, and Hinton, each brought their claim outside of the statute of limitations for a false light invasion of privacy claim. (Doc. 73 at 10–11). The Court must look to Arizona law to determine whether Plaintiffs' false light claims are barred. *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 528 (9th Cir. 2011); *Mertens v. Hewitt Assocs.*, 948 F.2d 607, 612–13 (9th Cir. 1991) (applying state law to determine accrual date for pendent state law claim). The parties agree that there is a one-year statute of limitations for false light claims. (Doc. 73 at 10–11; Doc. 79 at 6–

7); *see also Watkins v. Arpaio*, 367 P.3d 72, 77 ¶¶ 20–21 (Ariz. Ct. App. 2016). Plaintiffs filed the Complaint (Doc. 1-1) on April 24, 2018. Accordingly, any false light claim based on a publication of a flyer made before April 24, 2017 is time-barred. *See Watkins*, 367 P.3d at 77 ¶¶ 20–21.

Plaintiffs do not dispute the dates of publication that Defendant articulates. The publications relating to Plaintiff Geiger occurred between October 27, 2015 through February 28, 2017, and thus Plaintiff Geiger's false light claim is time-barred. (Doc. 73 at 11). The publications relating to Plaintiff Gibson occurred on May 14, 2016 and July 7, 2016; therefore, Plaintiff Gibson's false light claim is likewise time-barred. (*Id.*). One of the publications relating to Plaintiff Hinton occurred on August 13, 2016, meaning that Plaintiff Hinton's false light claim for that publication is time-barred. (*Id.*). Her false light claim for Defendant's publication of her image in a flyer on September 2, 2017, however, is not time-barred and may go forward. Summary judgment will be granted in Defendant's favor as to all false lights claims that are based on publications of Plaintiffs' images that occurred prior to April 24, 2017.

The Court rejects Plaintiffs' argument regarding the continuing wrong doctrine. Plaintiffs assert that "it is well-settled in this Circuit that '[w]hen a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends." (Doc. 79 at 6–7 (alteration in original) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)). Plaintiffs paint the legal authority they rely on—the *Flowers* case—in an extremely false light. Nothing in *Flowers* stands for the proposition that it is "well-settled" in the Ninth Circuit that the statute of limitations for a false light claim does not begin to run until the wrongful conduct ends. Instead, the *Flowers* court explicitly rejected the continuing wrong doctrine as it related to the plaintiff's defamation claim as "defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception." *Flowers*, 310 F.3d at 1126 (citation omitted). *Flowers* offers Plaintiffs no support.

In any event, the continuing wrong doctrine has been explicitly rejected under Arizona law. *Watkins*, 367 P.3d at 77 ¶¶ 20–21.[5] Indeed, in *Watkins*, the court dispensed with plaintiff's claim under the statute of limitations through a simple analysis: plaintiff "did not cite any actionable statement [defendant] made concerning him within a year of filing his lawsuit." *Id.* ¶ 21. Because the same is true here as to the false lights claims of Plaintiffs Geiger, Gibson, and Hinton (but only as to the August 13, 2016 publication for Plaintiff Hinton), summary judgment must be entered in favor of Defendant on those claims.

### b.    Appropriation

Again, both sides seek summary judgment on Plaintiffs' appropriation claim. (Doc. 73 at 13–15; Doc. 76 at 5–7). However, neither party has shown entitlement.

Preliminarily, Defendant argues that Arizona law does not recognize a claim for appropriation, which bars Plaintiffs' appropriation claims. (Doc. 73 at 13–14). Not so. First, courts in Arizona have recognized the claim. *See, e.g.*, *In re Estate of Reynolds*, 327 P.3d 213, 214 ¶ 2, 216 ¶ 12 (Ct. App. 2014);[6] *see also ACT Grp., Inc. v. Hamlin*, No. CV-

[5] The Court recognizes that *Watkins* is not binding authority as it was authored by the Arizona Court of Appeals and not the Arizona Supreme Court, whose decisions are binding on this Court. *See In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990). Nonetheless, in the absence of binding authority from a state's highest court, the Court may rely on "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance" in order to "predict how the highest state court would decide the issue." *See id.* No decision by the Arizona Supreme Court is on point, but the Court finds that *Watkins* is persuasive. Moreover, the Court finds that there is no evidence—let alone convincing evidence—that the Arizona Supreme Court would take issue with *Watkins*. *Id.* In fact, Arizona has adopted the Uniform Single Publication Act, which provides, in relevant part, "No person shall have more than one cause of action for damages for libel, slander, invasion of privacy or any other tort founded upon a single publication." Ariz. Rev. Stat. Ann. § 12-651(A). Courts have uniformly held that this act applies to internet publications, meaning that "the statute of limitations begins to run when the allegedly defamatory material is first made available to the public by posting it on a website." *See Larue v. Brown*, 333 P.3d 767, 772 ¶¶ 22–23 (Ariz. Ct. App. 2014) (collecting cases). Because false light claims are for invasion of privacy, § 12-651(A) applies, meaning that a false light claim begins to accrue for purposes of the statute of limitations when the publication giving rise to the claim was first published.

[6] Defendant claims that, in *Estate of Reynolds*, the Arizona Court of Appeals did not hold that there is a cause of action under Arizona law for appropriation despite the court's discussion of appropriation. (Doc. 73 at 14). Instead, Defendant asserts that the court's discussion regarding appropriation there was merely obiter dictum. (*Id.*; Doc. 85 at 9). This Court is perplexed. Indeed, the *Estate of Reynolds* court specifically stated, "[w]e *hold* that a right of publicity exists under Arizona law," and the court went on to say that a "violation

1    12-567-PHX-SMM, 2014 WL 4662234, at *8 (D. Ariz. Sept. 18, 2014). Moreover, even if

2    the claim had not been recognized in Arizona, Arizona courts apply the Restatement so

3    long as there is no law to the contrary. *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962,

4    968 (Ariz. 1990). The Restatement clearly recognizes a claim for appropriation (also

5    known as violation of the right of publicity). Restatement (Third) of Unfair Competition,

6    § 46 (Am. Law Inst. 2006) [hereinafter Restatement (Third)]; *see Estate of Reynolds*, 327

7    P.3d at 215 ¶ 8; *see also* Restatement (Second) § 652C ("One who appropriates to his own

8    use or benefit the name or likeness of another is subject to liability to the other for invasion

9    of his privacy.").[7] As such, the Court rejects Defendant's argument that Arizona law does

10   not recognize a claim for appropriation.

11           Defendant also asserts that the Arizona Legislature has foreclosed, by statute, a

12   cause of action for appropriation for all those not in the military. (Doc. 73 at 13–14).

13   Arizona law provides: "[t]he right to control and to choose whether and how to use a

14   soldier's name, portrait or picture for commercial purposes is recognized as each soldier's

15   right of publicity." Ariz. Rev. Stat. Ann. § 12-761(A). But, that reading of § 12-761 is a

16   stretch, especially considering that cases have recognized appropriation as a cause of action

17   since § 12-761's passage in 2007. *See, e.g.*, *Estate of Reynolds*, 327 P.3d at 216 ¶ 12.

18   Moreover, it is presumed that statutes do not eliminate common law causes of action unless

19   there is no reasonable doubt that the Arizona Legislature intended to do so. *Orca Commc'ns*

---

of the right of publicity . . . [is] termed appropriation." *Estate of Reynolds*, 327 P.3d at 214–15 ¶¶ 2, 7 (emphasis added). The court concluded that the plaintiff there could not establish an appropriation claim, and thus, the court's determination that there is a claim for appropriation under Arizona law was essential to the court's decision. *Id.* at 218 ¶ 26. Accordingly, the *Estate of Reynolds* court's determination that there is a cause of action for appropriation is not obiter dictum as Defendant argues. *Pioneer Annuity Life Ins. ex rel. Childers v. Rich*, 880 P.2d 682, 685 (Ariz. Ct. App. 1994).

[7] There is a line of federal cases in the District of Arizona that recognizes an appropriation claim under the right to privacy as articulated by the Restatement (Second) § 652C. *See, e.g.*, *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F. Supp. 2d 1108, 1111 (D. Ariz. 2000). However, in *Estate of Reynolds*, cited above, the Arizona Court of Appeals recognized an appropriation claim as part of the right to publicity under Restatement (Third) §§ 46–49. *Estate of Reynolds*, 327 P.3d at 214–15 ¶¶ 7–12. The Court will follow the lead of the Arizona Court of Appeals rather than the line of federal cases that view appropriation as a claim for violation of the right to privacy in an effort to abide by the Court's duty to predict what the Arizona Supreme Court would do if it were deciding the issue. *See ACT Grp., Inc.*, 2014 WL 4662234, at *8.

*Unlimited, LLC v. Noder*, 337 P.3d 545, 547 ¶ 10 (Ariz. 2014); *see Pasquantino v. United States*, 544 U.S. 349, 359 (2005). The Court will not read a cause of action out of Arizona law where the Arizona Legislature has not expressly done so.

Under Arizona law, "'[o]ne who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability' for resulting damages." *Estate of Reynolds*, 327 P.3d at 215 ¶ 8 (alteration in original) (quoting Restatement (Third) § 46). A claim for appropriation typically arises from "the unauthorized use of a well-known person's name or likeness in connection with the advertising of goods or services." *Id.* at 216 ¶ 11. Nonetheless, appropriation of "the identity of an unknown person may possess commercial value" as well. *Id.* (citation omitted).

The parties have not established that the undisputed material facts entitle any party to judgment as a matter of law. Plaintiffs have not shown that it is "beyond controversy" that they can show "every essential element of" their appropriation claims based on the undisputed facts. *See S. Cal. Gas Co.*, 336 F.3d at 888. Meanwhile, Defendant has failed to show that Plaintiffs will be unable to meet at least one element of their claims.

Plaintiffs have not shown that the undisputed facts establish a prima facie case for appropriation. Where a defendant appropriates a plaintiff's "visual likeness," i.e., the plaintiff's image, the plaintiff must show that she is "reasonably identifiable from the photograph or other depiction." Restatement (Third) § 46 cmt. d. "Relevant evidence includes the nature and extent of the identifying characteristics used by the defendant, the defendant's intent, the fame of the plaintiff, evidence of actual identification made by third persons, and surveys or other evidence indicating the perceptions of the audience." *Id.* Whether the defendant's use of a plaintiff's image identifies the plaintiff is a question of fact. *Id.* Thus, Plaintiffs' Motion (Doc. 76) must be denied as it is not "beyond controversy" that it can show Defendant appropriated their image as that finding must be made by the trier of fact. *See S. Cal. Gas Co.*, 336 F.3d at 888.

Plaintiffs' Motion (Doc. 76) also fails because it is their burden to show damages. Restatement (Third) § 49 provides:

> (1) One who is liable for an appropriation of the commercial value of another's identity under the rule stated in § 46 is liable for the pecuniary loss to the other caused by the appropriation or for the actor's own pecuniary gain resulting from the appropriation, whichever is greater, unless such relief is precluded by an applicable statute or is otherwise inappropriate under the rule stated in Subsection (2).

That analysis is based on a number of factors, which are inappropriate for determination on summary judgment. Indeed, one factor relates to "the intent of the actor and whether the actor know or should have known that the conduct was unlawful." Restatement (Third) § 49(2)(d). Defendant vigorously asserts that it believed it was acting in conformity with the law at all times, (Doc. 73 at 14–15; Doc. 85 at 4),[8] and a party's intent must typically be determined by the finder of fact. *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999). Therefore, Plaintiffs have not established a prima facie case for appropriation that entitles it to summary judgment.

Nor has Defendant established that Plaintiffs cannot establish a prima facie case of appropriation. As noted, Arizona law is clear that there is "a cause of action against one who appropriates the commercial value of a person's identity 'for purposes of trade,' meaning, for example, 'in advertising the user's goods or services.'" *Estate of Reynolds*, 327 P.3d at 217 ¶ 24 (citing Restatement (Third) §§ 46–47). "The name, likeness, and other indicia of a person's identity are used 'for purposes of trade' . . . if they are used in advertising the user's goods or services . . . or are used in connection with services rendered by the user." Restatement (Third) § 47. Unauthorized use of one's likeness in "solicitations of prospective purchasers will ordinarily subject the user to liability for infringement of the other's right of publicity." *Id.* cmt. a. Defendant states that the "purpose" of the flyers that

---

[8] On the topic of intent, Defendant contends that it is entitled to summary judgment on Plaintiffs' appropriation claims as it asserts Plaintiffs cannot show actual malice as required by the First Amendment. (Doc. 73 at 15). Because the First Amendment does not restrict a plaintiff's ability to sue a defendant for appropriating its name or likeness without consent, the Court rejects Defendant's argument. *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 578 (1977); *Estate of Reynolds*, 327 P.3d at 215 ¶ 9.

included Plaintiffs' images "was to promote special events or drink specials that were to occur at [its strip club] through social media." (Doc. 73 at 3). In other words, the flyers were advertisements, as Defendant's manager noted. (*See* Doc. 76-9 at 20). And, it is undisputed that Defendant did not have, or even seek, express authorization to use Plaintiffs' images. (Doc. 76-9 at 15–18; Doc. 79 at 9). Accordingly, there are at least triable issues as to whether Defendant used Plaintiffs' images to advertise its business without Plaintiffs' authorization.

Defendant's argument to the contrary—based simply on the say-so of its manager that use of Plaintiffs' images in the flyers did not affect business, (Doc. 73-2 at 31; Doc. 76 at 3–4)—is not sufficient to say the undisputed facts establish Plaintiffs cannot prevail on their appropriation claim. Plaintiffs' survey evidence indicates that eighty-six percent of respondents thought the images of each of the Plaintiffs was "extremely important" or "somewhat important" to "initially attracting attention to the ads." (Doc. 66-1 at 89). That evidence could support a finding that Defendant gained from use of the Plaintiffs' images in the flyers, and one of the factors in determining whether damages are appropriate is the "the degree of certainty with which the plaintiff has established the fact and extent of the pecuniary loss or the actor's pecuniary gain resulting from the appropriation." Restatement (Third) § 49(2)(a). Perhaps Defendant can show that it is too uncertain that it gained from its use of Plaintiffs' images, but that determination is inappropriate to make on summary judgment in light of the survey evidence Plaintiffs offer. (Doc. 66-1 at 27–143).

Defendant also claims its graphic designer believed he was authorized to use Plaintiffs' images. (Doc. 73 at 3, 12). As noted above in regard to Plaintiffs' false light claim, this issue cannot be decided on summary judgment. First, "statements of . . . subjective intention are matters of credibility for the" finder of fact. *Kaelin*, 162 F.3d at 1042; *see Harris*, 183 F.3d at 1050. Moreover, because it is clear that neither Defendant nor the graphic designer sought the express consent of any of the Plaintiffs, the question of apparent consent must be determined by the finder of fact. Restatement (Second) § 892

("Existence of apparent consent is a fact issue . . . ."). Accordingly, the factfinder must determine if there was authorization for Defendant to use Plaintiffs' images.

There are triable issues of fact as to the elements of Plaintiffs' appropriation claim. Summary judgment must therefore be denied for both parties on this claim.

**c.     Lanham Act**

Plaintiffs also seek relief under the Lanham Act, 15 U.S.C. § 1125(a). (Doc. 1-1 at 16–19; Doc. 73 at 15–21; Doc. 76 at 7–19). The Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Thus, there are two claims a plaintiff can assert under the Lanham Act: (1) false association and (2) false advertising. *Id.* Plaintiffs assert both claims, and both sides seek summary judgment on each claim. (Doc. 73; Doc. 76).

**1.     False Association**

Section 1125(a)(1)(A) prohibits "the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997). Plaintiffs allege that Defendant's use of their image in the flyers violates § 1125(a)(1)(A) because

- 17 -

that use falsely implies to consumers that Plaintiffs have endorsed Defendant's strip club. (Doc. 1-1 at 16–19).

For each of the Plaintiffs to prevail on her false association claim, she must show that Defendant's use of her respective image is likely to cause confusion amongst consumers as to whether she endorsed, sponsored, or approved of the Defendant's strip club. *See Lemon*, 437 F. Supp. 2d at 1095. That determination is made through an eight-factor test. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). The factors include:

> (1) strength of the plaintiff's mark;
> (2) relatedness of the goods;
> (3) similarity of the marks;
> (4) evidence of actual confusion;
> (5) marketing channels used;
> (6) likely degree of purchaser care;
> (7) defendant's intent in selecting the mark;
> (8) likelihood of expansion of the product lines.

*White*, 971 F.2d at 1400 (citation omitted). Because the issue of likelihood of confusion is inherently factual, summary judgment is disfavored. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010); *Wendt*, 125 F.3d at 812. Where a majority of factors could tip in favor of either party, summary judgment should not be granted. *Fortune Dynamic, Inc.*, 618 F.3d at 1039 (reversing summary judgment for that reason). Moreover, because "[l]ikelihood of confusion is a factual determination, . . . district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Id.* (citation omitted).

There is a claim under the Lanham Act where a defendant's use of a celebrity's persona creates "confusion over endorsement." *Lemon*, 437 F. Supp. 2d at 1094–95 (citation omitted). Such a false association claim is referred to as false endorsement. *See id.* Here, Plaintiffs articulate a false endorsement claim. (Doc. 1-1 at 16–19; Doc. 76 at 13–15).

### a.  Strength of Plaintiffs' Marks

In a celebrity-endorsement case, such as this one, the "'strength' of [a] plaintiff's mark refers to the level of recognition the celebrity enjoys among members of society." *White*, 971 F.2d at 1400. But, the relevant inquiry is limited to the members of society that the use was directed at. *Id.*

There is a triable issue of fact as to the level of recognition Plaintiffs have amongst the portion of society that Defendant advertises to. Plaintiffs' expert, Martin Buncher, reported that between fifteen to twenty percent of those in a random sample of adults in "metropolitan areas surrounding [Defendant's] club location" who had been to a bikini bar or strip club in the last two years recognized each of the Plaintiffs. (Doc. 66-1 at 33, 42, 85, 95). Further, ninety percent of those surveyed believed that Plaintiffs agreed to promote the club, and eighty-seven percent of respondents believed that Plaintiffs "might participate in some of the events and activities taking place at the club." (*Id.* at 93–94). It is thus possible that at least a portion of individuals to whom Defendant directs its advertising recognized and believed each of the Plaintiffs agreed to promote the Defendant's strip club. *See Scott v. Citizen Watch Co. of Am., Inc.*, No. 17-CV-00436-NC, 2018 WL 1626773, at *9 (N.D. Cal. Apr. 4, 2018) (finding triable issue of fact as to likelihood of confusion where plaintiff "offer[ed] evidence that at least some consumers knew of [plaintiff] . . . , were excited to buy the watch because of its connection to [plaintiff], and may actually have believed [plaintiff] endorsed the product"); *cf. Lemon*, 437 F. Supp. 2d at 1096 (noting that absence of "evidence that actual or potential consumers of the [product] recognize [p]laintiffs" meant that this factor favored defendants). Accordingly, there is a triable issue of fact as to whether this factor favors Plaintiffs.

### b.  Relatedness of the Goods

The next factor is the relatedness of the goods. Where the mark is related to a celebrity's fame, "the term 'goods' concerns the reasons for or source of the celebrity's fame." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001) (citation omitted). For example, in Downing, the Ninth Circuit concluded that the second factor fell

in plaintiffs' favor because their "fame is due to their surfing success" and that "success could be seen as closely-related to the [defendant]'s surf-related clothing." *Id.* at 1008. The relevant question is whether consumers may be confused as to a celebrity's association with or sponsorship of a defendant's goods or services. *Wendt*, 125 F.3d at 813 ("A jury could conclude that this factor weighs in [plaintiffs]' favor because it would be reasonable for a customer to be confused as to the nature of [plaintiffs'] association with [defendant's] bars and the goods sold there.").

Here, Plaintiffs' fame arises from their modeling careers. (Doc. 73 at 12–13, 15; *see also* Doc. 76 at 2–3). The images of Plaintiffs that Defendant used in the flyers came from photoshoots of each of the Plaintiffs. (Doc. 73 at 3–4; Doc. 79 at 2; *see also* Doc. 76 at 2–3). Defendant states, "Plaintiffs commercialize themselves through the sexualization of their faces and/or bodies and have appeared in a variety of men's magazines." (Doc. 73 at 12). As Buncher's survey indicates, sixty-three percent of respondents believed it is "very likely" that "the[] women shown in the ads . . . represent the same kind of women you would expect to see at" Defendant's strip club, while twenty-eighty percent said it was somewhat likely. (Doc. 66-1 at 95). Therefore, as in *Downing*, the reasonable inference that the trier of fact could make is that Defendant's use of each of the Plaintiffs' image is closely related to their fame as both deal with the physical appearance of each of the Plaintiffs. In fact, Buncher's survey indicated that eighty-six percent of respondents felt the images of each of the Plaintiffs was "extremely important" or "somewhat important" to "initially attracting attention to the ads" and ninety percent thought use of Plaintiffs' images signified Plaintiffs agreed to promote Defendant's strip club. (Doc. 66-1 at 89, 93). Thus, as in *Wendt*, the trier of fact here could find that a consumer would be confused regarding Plaintiffs' association with Defendant's strip club based on Defendant's use of Plaintiffs' images, meaning that this factor would favor Plaintiffs. As such, there is at least a triable issue as to the relatedness to the source of Plaintiffs' fame and Defendant's use of their images.

### c.     Similarity of the Marks

There is a triable issue as to this factor as Defendant used Plaintiffs' actual images. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) ("No one disputes the third factor: [defendant] used actual photos of [the celebrity] on its merchandise."); *see also Downing*, 265 F.3d at 1008 ("Applying the third factor, the similarity of the likeness, to the [plaintiffs] is clear because it is an actual photograph of the [plaintiffs] with their names designated."); *Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16-CV-791-T-36AAS, 2018 WL 10373435, at *9 (M.D. Fla. Feb. 2, 2018).

### d.     Evidence of Actual Confusion

There is a triable issue of fact as to evidence of actual confusion as Plaintiffs' survey indicates that ninety percent of those surveyed believed that Plaintiffs agreed to promote the club and eighty-seven percent of respondents believed that Plaintiffs "might participate in some of the events and activities taking place at the club." (Doc. 66-1 at 94); *see Scott*, 2018 WL 1626773, at *9.

### e.     Marketing Channels Used

There is a triable issue of fact as to this factor as well. All of Defendant's flyers appeared on social media which served as the marketing channel for Defendant's strip club. *See White*, 971 F.3d at 1400 (stating fifth factor favored plaintiff where parties both used plaintiff's image in magazines). *But cf. Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) (finding that this factor was "equivocal" where the marketing channel the parties used was the internet). While it is true that the channel used was the internet, which is a ubiquitous form of advertising, more specifically, the channel used was social media, and each of the Plaintiffs—save Plaintiff Geiger—also uses social media to promote herself. (*See* Doc. 73 at 2–4; Doc. 76 at 2–4, 12–13, 15–16; *see also* Doc. 79 at 1–2). Consequently, there is at least a triable issue of fact as to this factor for each of the Plaintiffs except for Plaintiff Geiger.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

###### f.      Likely Degree of Purchaser Care

There is also triable issue of fact as to this factor. "Likelihood of confusion is determined on the basis of a 'reasonably prudent customer.'" *Brookfield Commc'ns Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). "Low consumer care . . . increases the likelihood of confusion." *Playboy Enters., Inc.*, 354 F.3d at 1028.

This factor could go either way. On the one hand, eighty-six percent of respondents felt the images of each of the Plaintiffs were "extremely important" or "somewhat important" to "initially attracting attention to the ads." (Doc. 66-1 at 43, 89). That finding may support the inference that purveyors of strip clubs have a high level of care as they are selective about which strip clubs to go to based on their view of the women that will be present, which favors Defendant. On the other hand, eighty-seven percent of respondents believed that Plaintiffs "might participate in some of the events and activities taking place at the club" and ninety-one percent of respondents indicated it was very likely or somewhat likely that Plaintiffs "represent the same kind of woman [the respondent] would expect to see at the club." (*Id.* at 94–95). These findings may indicate that no matter how sophisticated Defendant's target audience is, Defendant's prospective cliental could believe that Plaintiffs were affiliated with Defendant's strip club in some way, which may favor Plaintiffs or at least result in a tie. *Cf. Lemon*, 437 F. Supp. 2d at 1098. In any event, because it is unclear how sophisticated Defendant's target market is, there is a triable issue of fact as to this factor. *See Fortune Dynamic, Inc.*, 618 F.3d at 1038 ("[T]he difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at [defendant's store] only confirms the need for this case to be heard by a jury.").

###### g.      Defendant's Intent in Selecting the Marks

The relevant inquiry under this factor is whether Defendant "intended to profit by confusing consumers concerning the endorsement of" Defendant's strip club. *Lemon*, 437 F. Supp. 2d at 1098 (emphasis removed) (citing *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994)). "When an alleged infringer knowingly adopts a mark similar to another's,

1    courts will presume an intent to deceive the public." *Kournikova v. Gen. Media Commc'ns*

2    *Inc.*, 278 F. Supp. 2d 1111, 1126 (C.D. Cal. 2003) (quoting *Official Airline Guides, Inc. v.*

3    *Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)). While Defendant claims that none of its

4    employees nor its graphic designer knew who each of the Plaintiffs was when it used her

5    image and that it thought it was authorized to use Plaintiffs' images, it never attempted to

6    confirm that it had the right to use Plaintiffs' images. (Doc. 73 at 3, 21; Doc. 73-2 at 32;

7    Doc. 73-2 at 35; Doc. 76-9 at 10, 15–16; Doc. 79 at 9). Moreover, intent is a fact issue that

8    must be resolved by the factfinder. *See Harris*, 183 F.3d at 1050. And, even if Defendant

9    is correct that Plaintiffs cannot show an intent to confuse consumers, this factor carries

10   little weight because "an intent to confuse customers is not required for a finding of

11   trademark infringement." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th

12   Cir. 2000) (citation omitted). Nonetheless, the Court finds that there is at least a triable

13   issue of fact as to Defendant's intent.

14                  **h.      Likelihood of Expansion of the Product Line**

15            Defendant is a strip club, and each of the Plaintiffs is currently or was formerly a

16   model. It is therefore unlikely that Plaintiffs and Defendant will compete. Thus, as in most

17   typical celebrity endorsement cases—like this one—this factor favors neither party. *See*

18   *White*, 971 F.2d at 1401.

19                  **i.      Conclusion**

20            After review of the *Sleekcraft* factors, it is clear that there is a triable issue as to the

21   likelihood of confusion here. Both sides' motions for summary judgment as to Plaintiffs'

22   false endorsement claims will therefore be denied as there are triable issues as to a majority

23   of factors.

24            As to the Court's decision on Defendant's Motion (Doc. 73), most compelling is the

25   fact that Plaintiffs offer survey evidence that supports a finding of actual confusion.

26   Indeed, the Ninth Circuit has held that "[i]f enough people have been *actually* confused,

27   then a *likelihood* that people are confused is established." *Thane Int'l, Inc. v. Trek Bicycle*

28   *Corp.*, 305 F.3d 894, 902 (9th Cir. 2002). In *Thane International, Inc.*, the Ninth Circuit

reversed summary judgment where survey results said 27.7% of respondents "were confused with respect to the source or association of the" relevant products based on the similarity of the name and/or logo of each party's mark. *Id.* at 902–03; *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111 (9th Cir. 1992) (holding that evidence of actual consumer confusion "support[ed] the jury's finding that consumers were likely to be misled by the commercial into believing that [plaintiff] endorsed" defendant's product). That number is a far cry from the ninety percent of respondents here who said that the image of each of the Plaintiffs signified to them that Plaintiffs agreed to promote Defendant's strip club. (Doc. 66-1 at 93). Defendant has not shown it is entitled to summary judgment on Plaintiffs' false endorsement claims.

Similarly, Plaintiffs too have not shown entitlement to summary judgment as there are triable issues of fact as to many of the factors. Thus, they have not shown it is "beyond controversy" that they will prevail on their claim. *See S. Cal. Gas Co.*, 336 F.3d at 888. Indeed, the Ninth Circuit has cautioned that summary judgment should be granted sparingly on false endorsement claims as the "[l]ikelihood of confusion is a factual determination." *Fortune Dynamic, Inc.*, 618 F.3d at 1039 (citation omitted). Plaintiffs' Motion (Doc. 76) will likewise be denied.

In short, there is a triable issue as to the likelihood of confusion here. Both motions (Doc. 73; Doc. 76) will be denied accordingly.

### 2.     False Advertising

Defendant argues that it is entitled to summary judgment on Plaintiffs' false advertising claim. (Doc. 73 at 15–19). Defendant contends that Plaintiffs cannot show a commercial injury. (*Id.*).

A plaintiff asserting a false advertising claim must establish that her injury is within the "zone of interests" that the Lanham Act protects and that the injury was proximately caused by violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014). First, "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest

in reputation or sales." *Id.* at 131–32. The plaintiff must show, among other things, "that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (citation omitted). Second, to show proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc.*, 572 U.S. at 133–34; *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (stating a plaintiff establishes a cognizable injury under the Lanham Act "if some consumers who bought the defendant's product under a mistaken belief[,] fostered by the defendant[,] would have otherwise bought the plaintiff's product" (internal quotations marks, alterations, and citations omitted)).

Simply put, Plaintiffs' false advertising claims fail because Plaintiffs and Defendant are not competing in the same market. To prevail on a Lanham Act claim for false advertising, a plaintiff must show that the defendant's false advertising was "harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037; *see Lexmark Int'l, Inc.*, 572 U.S. at 131–32. Defendant is not a model, and Plaintiffs are not strip clubs. While that statement sounds absurd, it underscores why Plaintiffs cannot show that Defendant's use of their images was harmful to Plaintiffs' ability to compete with Defendant. *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2020 WL 122874, at *3 (D. Ariz. Jan. 10, 2020). There is no cognizable competitive injury as Plaintiffs and Defendant are not in the same market and thus are not in competition with each other. Nothing in the record supports a finding that Plaintiffs and Defendant compete with each other for the same consumers such that they "vie for the same dollars from the same consumer group." *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1120 (C.D. Cal. 2010) (citation omitted). Because Plaintiffs and Defendant are not in the same market, Plaintiffs' cannot prevail on their Lanham Act

claims for false advertising as there is no competitive injury here. Summary judgment on these claims in favor of Defendant is appropriate.

### 3.   Conclusion

The Court will deny summary judgment to both parties on Plaintiffs' Lanham Act claims for false association. The Court will grant summary judgment to Defendant (and therefore deny summary judgment to Plaintiffs) on Plaintiffs' Lanham Act claims for false advertising.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 73) is **GRANTED IN PART** and **DENIED IN PART**. The Motion for Summary Judgment (Doc. 73) is granted as to Plaintiffs' claims for false advertising under the Lanham Act as well as the claims for false light invasion of privacy brought by Plaintiffs Geiger, Gibson, and Hinton (but only as to the August 13, 2016 publication for Plaintiff Hinton). All other claims will go forward.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 76) is **DENIED**.

Dated this 29th day of June, 2020.

_____
James A. Teilborg
Senior United States District Judge