WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Geiger, et al., | No. CV-18-01443-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Creative Impact Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Reconsideration of this Court's Order dated June 30, 2020 (Doc. 99). (Doc. 103). The Court ordered briefing from Defendant Creative Impact, Inc., (Doc. 104), which the Court has received, (Doc. 105). The Court also gave Plaintiffs the option of replying to Defendant's opposition brief, (Doc. 104), and they did not. The Court now rules on the Motion (Doc. 103).

**I.   BACKGROUND**

On June 30, 2020, the Court granted summary judgment on Plaintiffs' false advertising claims under the Lanham Act, 15 U.S.C. § 1125(a), in favor of Defendant. (Doc. 99 at 24–26). Plaintiffs seek reconsideration of that ruling. (Doc. 103). Defendant opposes. (Doc. 105).

Briefly by way of factual background, Plaintiffs each asserted a claim for false advertising against Defendant for use of their images. (*See* Doc. 99 at 1). "Defendant operates a strip club located in Phoenix, Arizona." (*Id.*). Plaintiffs are, or were formerly, models. (*Id.*). Defendant used images of Plaintiffs in digital flyers on its social media

accounts that publicized certain events that were to occur at the strip club. (*Id.* at 2). Plaintiffs assert that Defendant's use of their images in the flyers was unauthorized and that it implied that Plaintiffs were strippers at Defendant's strip club or that they were otherwise affiliated with or promoted the strip club. (*Id.*; Doc. 1-1 at 1–2).

## II. LEGAL STANDARD

District of Arizona Local Rule of Civil Procedure 7.2(g) governs motions for reconsideration. It provides:

> The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence. Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order. Failure to comply with this subsection may be grounds for denial of the motion.

LRCiv 7.2(g)(1). Plaintiffs claim that one of the Court's summary judgment rulings was erroneous and seek relief pursuant to Federal Rule of Civil Procedure 60(b). (Doc. 103 at 1–2). To prevail on their Motion for Reconsideration (Doc. 103), Plaintiffs must show manifest error, which is "error that is plain and indisputable . . . that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Estrada v. Bashas' Inc.*, No. CV-02-00591-PHX-RCB, 2014 WL 1319189, at *1 (D. Ariz. Apr. 1, 2014) (quoting *Black's Law Dictionary* 622 (9th ed. 2009)); *see also Centeno v. City of Fresno*, No. 116CV00653DADSAB, 2019 WL 991049, at *3 (E.D. Cal. Feb. 28, 2019) (stating that "it appears that a clearly erroneous order can be corrected by way of a Rule 60(b) motion"); *Taylor v. Deutsche Bank Nat'l Tr. Co.*, No. CV-16-01792-PHX-DLR, 2017 WL 192923, at *5 n.4 (D. Ariz. Jan. 18, 2017) (noting that Rule 60(b) relief may be appropriate where court committed "clear error").

## III. ANALYSIS

Plaintiffs contend that the Court's ruling granting summary judgment on each of their false advertising claims was erroneous. (Doc. 103). Because the Court will consider the substantive arguments in Plaintiffs' Motion for Reconsideration, (Doc. 103), it grants the Motion (Doc. 103), but will deny relief as the Court did not commit plain and indisputable error such that it completely disregarded controlling law or the credible evidence in the record.

In short, Plaintiffs argue "that the Court erred in effectively holding since Plaintiffs were not in the strip club business," Plaintiffs cannot prevail on their false advertising claims.[1] (Doc. 103 at 4). More specifically, Plaintiffs contend that the Court erred by granting summary judgment based on the fact that Plaintiffs and Defendant are not in direct competition, which is inconsistent with the Supreme Court's holding in *Lexmark International, Inc. v. Static Control Components, Inc. See* 572 U.S. 118, 136, 138–39 (2014).

The Court cannot quarrel with Plaintiffs' reading of *Lexmark*. There is no doubt that the Supreme Court expressly rejected any requirement that a plaintiff show direct competition to prevail on a false advertising claim. *See id.* But the Court departs with Plaintiffs from there.

In the summary judgment order, the Court found that the undisputed material facts reveal that Plaintiffs cannot show a competitive injury caused by Defendant. (Doc. 99 at 25 (citing *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005))). That finding was principally based on the fact that Defendant's use of Plaintiffs' images did not harm Plaintiffs' ability to compete in the

---

[1] The Court notes, as it has done previously, that it appears that the Supreme Court did away with the idea of "Lanham Act standing," instead focusing on what is required to show a Lanham Act claim for false advertising. *See ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2020 WL 122874, at *2 n.2 (D. Ariz. Jan. 10, 2020). While Plaintiffs refer to Lanham Act or false advertising standing throughout the Motion (Doc. 103), the Court will refer to the requirements stated by the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, as part of stating, and ultimately proving, a false advertising claim. *See* 572 U.S. 118, 127–29 (2014).

marketplace as Plaintiffs and Defendant do not "vie for the same dollars from the same consumer group." (*Id.* (quoting *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1120 (C.D. Cal. 2010))). In fact, Plaintiffs failed to point to any evidence in response to Defendant's Motion for Summary Judgment (Doc. 73) that indicated Plaintiffs' ability to compete *with anyone* in the marketplace was harmed. *Lexmark*, 572 U.S. at 133–34 (stating cognizable injury for false advertising "occurs when deception of consumers causes them to withhold trade from the plaintiff"). Instead, the only evidence they mustered was that Defendant did not pay them the fair market value for use of their images. (Doc. 79 at 12; *see also* Doc. 76 at 12–13 (identifying as the only specific injury that each of the Plaintiffs incurred was "being deprived of the fair market revenue she would have received but for Defendant's misappropriations")).[2] None of Plaintiffs' cited evidence indicates that Defendant's use of their images led consumers "to withhold trade from" them, which is supported by the fact that Plaintiffs and Defendant do not vie for money from the same consumer group. *Lexmark*, 572 U.S. at 133–34.

Plaintiffs contend that the *Lexmark* Court "conferred false advertising standing not only on the defendant's competitors, but on any individual or company that can allege 'an

---

[2] In Plaintiffs' *reply* in support of *their* motion for summary judgment, Plaintiffs asserted that "the fact that Defendant's own entertainers do not want to be publicly associated with [Defendant's strip club] reinforces Plaintiffs' standing as it makes clear the *potential* damage that public association with [the strip club] *could do* to a Plaintiff's business reputation." (Doc. 89 at 8 (emphasis added)). Plaintiffs cite to their damages expert, Stephen Chamberlin, who noted that there is an "embarrassment factor" that influences the negotiations for a particular modeling job—presumably in favor of the model—and the fact that some of the strippers at Defendant's strip club are "concerned about being affiliated with a gentlemen's club." (*Id.* (quoting Doc. 76 at 20 n.10); Doc. 70-1 at 60). Evidence that is not raised "*in the opposition* to summary judgment" need not be considered. *Hollis v. Harrington*, No. EDCV 09-00097 ODW, 2013 WL 5325709, at *13 (C.D. Cal. Sept. 19, 2013) (emphasis added) (quoting *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)). Plaintiffs did not offer any evidence of reputational injury *in response* to Defendant's summary judgment motion (Doc. 73), in which Defendant asserted Plaintiffs suffered no injury to sales or business reputation. *See* Fed. R. Civ. P. 56(c), (e) (stating that the court may deem a fact undisputed if party "fails to properly address another party's assertion of fact as required by Rule 56(c)"). Moreover, a court need not consider an argument raised for the first time in a reply brief as it deprives the opponent of the opportunity to respond, which is especially true, where, as here, Plaintiffs failed to raise the argument *in response* to Defendant's Motion for Summary Judgment (Doc. 73). *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863 (N.D. Cal. 2004). Nevertheless, as will be discussed, this evidence, even when considered, still does not save Plaintiffs' false advertising claims from summary judgment.

injury to a commercial interest in reputation or sales' based on a defendant's conduct." (Doc. 103 at 3). Plaintiffs' articulation of the *Lexmark* test is inaccurate. The *Lexmark* Court held "that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury *flowing directly from the deception wrought* by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133 (emphasis added). In fact, a plaintiff "cannot obtain relief without *evidence* of injury proximately caused by [a defendant's] alleged misrepresentations." *Id.* at 140. Thus, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.*

Plaintiffs did not meet their burden of creating an issue of material fact as to either prong of the *Lexmark* test. As the Court noted in the summary judgment order, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts by com[ing] forward with specific facts showing that there is a *genuine issue for trial*." (Doc. 99 at 2 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986))). And the nonmovant's bare assertions are not enough "to create a material issue of fact that would defeat the motion for summary judgment." (*Id.* at 2–3 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))). Each of the Plaintiffs failed to articulate "an injury to a commercial interest in sales or business reputation proximately caused by" Defendant's use of each of their respective images. *See Lexmark*, 572 U.S. at 140. The Court takes each prong of the *Lexmark* test in turn.

### a. Zone of Interest: Injury to a Commercial Interest in Sales or Business Reputation

First, each of the Plaintiffs failed to show there is a triable issue regarding whether she suffered an injury to a commercial interest in sales or business reputation, and thus, that her claim was within the zone of interests protected by the Lanham Act's false

advertising cause of action. In response to Defendant's Motion for Summary Judgment (Doc. 73), Plaintiffs cited no evidence to contradict Defendant's argument that they did not suffer injury redressable through a false advertising claim.[3] Plaintiffs failed to point to any evidence in the summary judgment record that their "position in the marketplace has been damaged." *See Lexmark*, 572 U.S. at 137; *see also TrafficSchool.com, Inc.*, 653 F.3d at 826–27 (stating a plaintiff asserting a false advertising claim must show "commercial injury," which is presumed "when defendant and plaintiff are direct competitors" as competitors who "vie for the same dollars from the same consumer group . . . can upset their *relative competitive positions*" through a misleading advertisement (emphasis added) (quoting *Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037; then quoting *Kournikova v. Gen. Media Commc'ns, Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003))); *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 346–50 (S.D.N.Y. 2019) (stating, in the absence of direct competition, plaintiff must have evidence of "actual injury"). Plaintiffs therefore failed to establish a triable issue regarding whether Plaintiffs suffered injury to any commercial interest in sales or business reputation.

This Court previously concluded that Plaintiffs did not articulate a cognizable injury to a commercial interest in sales or business reputation because Plaintiffs and Defendant are not in the same market. (Doc. 99 at 24–25). The Court recognizes that the *Lexmark* Court disavowed any requirement that a plaintiff show direct competition with a defendant to establish a Lanham Act claim for false advertising. *See* 572 U.S. at 136, 138–39. But analyzing whether there is market overlap between the parties, as the Court did here, is not synonymous with imposing a requirement that there be direct competition

---

[3] Plaintiffs' sole argument in response to Defendant's summary judgment motion was that they suffered injury because Defendant "use[d] each Plaintiff's image in commerce without remuneration or consent." (Doc. 79 at 12). That injury is not injury to a commercial interest in sales or business reputation as it does not tend to show that there was any effect on consumers. *Adweek LLC v. Carnyx Grp. Ltd.*, No. 1:18-CV-09923-GHW, 2019 WL 8405297, at *2 (S.D.N.Y. June 3, 2019) (dismissing false advertising claim based on false representation that plaintiff endorsed defendants' business as there was no allegations that any consumer deception had an effect on consumers).

to establish a false advertising claim. Indeed, the fact that the parties in *Lexmark* vied for consumer dollars within the same market was relevant to the *Lexmark* Court's analysis.

The parties there—Lexmark and Static Control—were in the printer-related-products market. Lexmark makes and sells printers and toner cartridges. *Id.* at 120–21. At some point, remanufacturers started buying empty cartridges from Lexmark customers and refurbishing them for reuse and resale. *Id.* at 121. In an attempt to reduce competition with the remanufacturers, Lexmark developed a "Prebate" program where it would give customers a twenty-percent discount if the customer agreed to send the cartridge back to Lexmark. *Id.* To enforce this, Lexmark created a chip that only it could replace to allow for the cartridge to be used again, which would stymie the remanufacturers' ability to remanufacture and resell the Prebate cartridges. *Id.* But Static Control, the other party in the *Lexmark* case, developed a chip that would mimic the Lexmark chip and thus allow remanufacturers to remanufacture and resell the Prebate cartridges. *Id.* Likely frustrated, Lexmark then told the remanufacturers that used the Static Control chip that it was illegal to use the chip. *Id.* at 122. Lexmark also communicated to buyers that they were legally bound to return the Prebate cartridges to Lexmark alone. *Id.* at 122–23. In other words, Lexmark attempted to eliminate competition in the printer-related-products market with the remanufacturers of Prebate cartridges, and thus, indirectly with Static Control. *Id.*

Relevant here, the *Lexmark* Court concluded that the lack of direct competition between Lexmark and Static Control was not dispositive. *Id.* at 136, 138–39. But, nonetheless, the Court recognized, based on the allegations, that State Control stated a false advertising claim as there was "likely to be something very close to a 1:1 relationship" between the reduction in sales of remanufactured Prebate cartridges and the reduction in sales of Static Control's chip. *Id.* at 139. Stated differently, there was competitive injury in the form of damage to Static Control's ability to compete in the printer-related-products market. *See id.* at 137, 139–40.

As noted above, this Court previously concluded that Defendant was entitled to judgment as a matter of law on Plaintiffs' false advertising claims as there is no evidence

that they vie for consumers in the same market, and thus Plaintiffs cannot establish a cognizable competitive injury. (Doc. 99 at 24–25). The Court acknowledges that there may be some tension between the *Lexmark* Court's rejection of a requirement for direct competition to establish a false advertising claim and Ninth Circuit precedent requiring that plaintiffs asserting a false advertising claim show that there is competitive injury. Even so, to the extent the Court can reconcile Ninth Circuit precedent requiring a competitive injury with *Lexmark*, it must. *See Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019). Ultimately, the relevant question here is "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127.

The *Lexmark* Court clearly overruled any requirement that there be direct competition to make out a false advertising claim. *See id.* at 136, 138–39. However, *Lexmark* did not necessarily overrule the requirement that an injury be competitive such that the plaintiff's ability to compete in the marketplace has been damaged. *Id.* at 137 (noting plaintiff was in the zone of interests protected by false advertising claims as its "position in the marketplace ha[d] been damaged by [defendant's] false advertising"); *TrafficSchool.com, Inc.*, 653 F.3d at 826–27 (stating "a plaintiff bringing a false advertising suit must show a discernibly competitive injury" (internal quotation marks and citations omitted)); *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *5 (N.D. Tex. July 20, 2017) (dismissing case because plaintiffs failed to "adequately plead[] an 'injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation'" or show that "their ability to compete in the marketplace" was negatively impacted as they did not identify which of their products compete with which of defendant's products (quoting *Lexmark*, 572 U.S. at 140; then quoting *Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011))); *cf. Dependable Sales & Serv., Inc.*, 377 F. Supp. 3d at 347–50 (concluding that where there is a lack of evidence of direct competition, plaintiff must come forward with evidence of actual injury to a commercial interest in sales or business reputation). In

fact, as noted above, in *Lexmark*, based on the allegations, there was "likely to be something very close to a 1:1 relationship between the number of refurbished Prebate cartridges sold (or not sold) by the remanufacturers" and the amount of chips Static Control sold (or did not sell). 572 U.S. at 139. This fact underscores that the parties in *Lexmark* competed for consumer dollars in the same market of printer-related products, and thus, that the alleged deception wrought there allegedly led to a competitive injury in the form of diverted sales and concomitant damage to Static Control's position in the marketplace. *See id.* at 123, 139.

In contrast, Plaintiffs have pointed to no evidence that creates a triable issue as to whether they have suffered damaged reputation, have lost modeling jobs or other business opportunities,[4] or their ability to compete in *any* market has been harmed—let alone one in which they vie for the same consumer dollars as Defendant. Plaintiffs raise in their Motion for Reconsideration that they have evidence that strippers at Defendant's strip club have concern about being publicly associated with a strip club. (Doc. 103 at 5). In fact, as noted above, *supra* note 2, Plaintiffs raised this argument for the first time in their reply in support of their summary judgment motion, where they stated, "the fact that Defendant's own entertainers do not want to be publicly associated with [Defendant's strip club] reinforces Plaintiffs' standing as it makes clear the *potential* damage that public association with [the strip club] *could* do to a Plaintiff's business reputation." (Doc. 89 at 8 (emphasis added) (citing Doc. 76 at 20 n.10)). In the same reply brief, Plaintiffs also cited to their expert Stephen Chamberlin, who accounted for an "embarrassment factor" in his calculations of the fair market value for Defendant's use of each respective image of each of the Plaintiffs. (Doc. 89 at 8 (citing Doc. 69-1 at 6)). The Court finds that Plaintiffs did not properly raise this argument on summary judgment as it was not articulated in opposition to Defendant's summary judgment motion (Doc. 73).

---

[4] As noted, Plaintiffs were formerly or are currently models, they do not sell product but rather offer a service—modeling. The Court refers to lost modeling jobs or other business opportunities as the functional equivalent of lost sales.

- 9 -

*See supra* note 2. However, even if the Court does consider it, there is no triable issue as to whether Plaintiffs suffered a cognizable injury to business reputation.

Plaintiffs' assertion that there is potential damage that could result from Defendant's use of their images illustrates why this evidence only creates metaphysical doubt—not a genuine dispute of material fact—as to whether Plaintiffs' business reputations were harmed. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87. In fact, Chamberlin's opinion was limited to "valu[ing] retroactively the compensation Plaintiff[s] would and should have received for the use of each [m]odel's image." (Doc. 69-1 at 3, 6). Plaintiffs did not tie Chamberlin's calculations of fair market value, which accounted for the so-called "embarrassment factor," to any concrete effect on their business reputations in response to Defendant's argument that they did not suffer an injury to a commercial interested protected by the false advertising cause of action. Neither Chamberlin's opinion nor any concern of Defendant's strippers about being publicly affiliated with a strip club illustrate that Plaintiffs' positions in the marketplace have been damaged from Defendant's use of each of their respective image or that there was any effect on consumer behavior towards any of the Plaintiffs. *See Lexmark*, 572 U.S. at 133–34, 137; *Adweek LLC*, 2019 WL 8405297, at *1–2; *see also* Lee Thomason, *After* Lexmark *Rejects Multifactor Measures for Standing, Which Challengers Stand in the Zone of Interests for Lanham Act Remedies?*, 25 Fed. Cir. B.J. 699, 755 (2016). In short, a plaintiff who brings a false advertising claim must bring "*evidence* of injury proximately caused by [the defendant's] alleged misrepresentations." *See Lexmark*, 572 U.S. at 133–34, 140; *see Dependable Sales & Serv., Inc.*, 377 F. Supp. 3d at 350. Plaintiffs have not brought evidence that establishes that there is a triable issue as to whether their business reputations were injured.

Plaintiffs have not demonstrated injury to any other interest that is protected by the false advertising cause of action as they failed to offer evidence that creates a triable issue as to whether their "position in the marketplace has been damaged," that there was any effect on consumer behavior towards Plaintiffs, or that any other commercial interest

redressable through a false advertising cause of action was injured. *See Lexmark*, 572 U.S. at 137; *see also TrafficSchool.com, Inc.*, 653 F.3d at 826–27 (indicating "a plaintiff bringing a false advertising suit must show a discernibly competitive injury" (internal quotation marks and citations omitted)); *Adweek LLC v. Carnyx Grp. Ltd.*, No. 1:18-CV-09923-GHW, 2019 WL 8405297, at *1–2 (S.D.N.Y. June 3, 2019) (dismissing false advertising claim based on false representation that plaintiff endorsed defendants' business—despite allegations that false representation gave defendants' services an increased "salable character" as a result of false representation and caused damage to plaintiff's brand—as there were no allegations that any deception had an effect on plaintiff's consumers); *Dependable Sales & Serv., Inc.*, 377 F. Supp. 3d at 347–50 (granting summary judgment on false advertising claim because plaintiffs failed to point to evidence of actual injury to commercial interest in reputation or sales where there was a lack of direct competition); *Grasshopper Motorcycles, Ltd. v. Rivera*, No. 14-CV-320-SLC, 2015 WL 853564, at *5–6 (W.D. Wis. Feb. 26, 2015) (noting that plaintiff must offer proof of "marketplace damages" to prevail on false advertising claim (citation omitted))).[5] As the Court noted in its summary judgment ruling, Plaintiffs cannot show

---

[5] Alternatively, though Plaintiffs do not argue that *Lexmark* overruled the competitive-injury requirement as stated in *Jack Russell Terrier Network of Northern California*, 407 F.3d 1027, to the extent *Lexmark* did overrule this precedent, the Court concludes that the reasoning in *Dependable Sales & Service, Inc.* is persuasive and adopts it. *See* 377 F. Supp. 3d at 348–50. There, the court noted that plaintiffs were required to "come forward with evidence that, if believed, demonstrates that sales were diverted from their [businesses] or their [businesses'] reputations were injured." *Id.* at 350. While this Court did not rely on the lack of direct competition in its original summary judgment ruling, the fact that the parties do not vie for the same consumer dollars in the same market illustrates a lack of direct competition such that Plaintiffs must therefore show evidence of actual injury to a commercial interest in sales or business reputation. *Id.* 348–50; *TrafficSchool.com, Inc.*, 653 F.3d at 826–27 (stating "a plaintiff bringing a false advertising suit must show a discernibly competitive injury" (internal quotation marks and citations omitted)); *cf. TrafficSchool.com, Inc.*, 653 F.3d at 827 ("[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing."). As discussed, Plaintiffs only speculated that each of their reputations *possibly could* be harmed from Defendant's use of each of their respective images, (Doc. 89 at 8 (citing Doc. 76 at 20 n.10; then citing Doc. 69-1 at 6)), yet they failed to cite *evidence* of any damage to business reputation. *See Lexmark*, 572 U.S. at 140; *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87. Plaintiffs cited no evidence of any other injury that is within the zone of interests protected by the Lanham Act's false advertising cause of action, and thus, summary judgment was appropriate.

competitive injury as a result of the fact that they do not vie for consumer dollars in the same market as Defendant, which illustrates why Plaintiffs were unable to show injury that affected their position in the marketplace or that they lost any jobs or other business opportunities. Plaintiffs failed to come forward with evidence to raise a triable issue as to whether they suffered injury to an interest protected by the Lanham Act's false advertising cause of action.

Plaintiffs did not demonstrate an injury that is within the zone of interests that can be vindicated by a false advertising cause of action. Summary judgment was therefore appropriate. Accordingly, the Court will deny relief on the Motion for Reconsideration (Doc. 103).

### b. Proximate Cause

Second, even if the Court assumes that Plaintiffs suffered injury to a commercial interest in sales or business reputation, Plaintiffs failed to point to facts in the summary judgment record that support that any such injury "flow[s] directly from the deception wrought by the defendant's advertising" such that the "deception of consumers causes them to withhold trade from" Plaintiffs. *Lexmark*, 572 U.S. at 133; *cf. TrafficSchool.com, Inc.*, 653 F.3d at 827 (stating that there is presumed injury to a commercial interest that flows from false advertising where parties "vie for the same dollars from the same consumer group" (citation omitted)). As the Court has noted, Plaintiffs and Defendant are not in the same market, and thus, the Court cannot presume that any injury to Plaintiffs flows from Defendant's use of Plaintiffs' images in association with Defendant's strip club. *See TrafficSchool.com, Inc.*, 653 F.3d at 827; *Dependable Sales & Serv., Inc.*, 377 F. Supp. 3d at 347–50; *see also Adweek LLC*, 2019 WL 8405297, at *2 (dismissing false advertising claim where defendants falsely claimed plaintiff endorsed their product as the court could not presume injury from the alleged deception because the parties were not in competition, and thus plaintiff needed to allege facts that the deception led consumers to withhold trade from plaintiff to state a claim). Plaintiffs must have "*evidence* of injury

proximately caused by" Defendant's use of their images such that it caused consumers "to withhold trade from" Plaintiffs. *Lexmark*, 572 U.S. at 133–34, 140.

In fact, on summary judgment, Defendant argued that Plaintiffs cannot show, based on the undisputed material facts, that its use of Plaintiffs' images caused consumers "to withhold trade from" Plaintiffs. (Doc. 73 at 15–16 (quoting *Lexmark*, 572 U.S. at 133)). Plaintiffs rebutted that argument by simply noting that "each Plaintiff earns her livelihood licensing her image to companies for commercial use" and thus the fact that Defendant used their "images in commerce without remuneration or consent" commercially injured them. (*Id.*). Plaintiffs added in their *reply* in support of *their* summary judgment motion that there is concern for embarrassment and "*potential* damage [from] public association with [Defendant's strip club] . . . to a Plaintiff's business reputation,"[6] which was supported by a citation to the fact that strippers at Defendant's club are "concerned about being affiliated with a gentlemen's club." (Doc. 89 at 8 (emphasis added) (citing Doc. 76 at 20 n.10)). None of these assertions respond to Defendant's argument that there is no triable issue as to whether "the deception wrought by" Defendant's use of their images caused consumers "to withhold trade from" Plaintiffs. *Lexmark*, 572 U.S. at 133.

---

[6] As the Court noted above, it is dubious that the nonmovant meets its burden of creating a genuine issue of material fact by responding to an argument from the opposing side's summary judgment motion, for the first time, in a *reply* brief to one's *own* summary judgment. A court may deem a fact undisputed where a party "fails to properly address another party's assertion of fact as required by Rule 56(c)." Fed. R. Civ. P. 56(c), (e). In fact, a court need not consider evidence "unless it is brought to [its] attention *in the opposition* to summary judgment." *Hollis*, 2013 WL 5325709, at *13 (emphasis added) (quoting *Carmen*, 237 F.3d at 1029). Moreover, it is axiomatic that an argument first raised in a reply brief need not be considered by the court as it deprives the opponent of the opportunity to respond. *Zamani*, 491 F.3d at 997; *Competitive Techs., Inc.*, 333 F. Supp. 2d at 863. The inherent unfairness in allowing a party to raise an argument for the first time in a reply is amplified, where, as here, the party specifically fails to raise the argument in response to a motion for summary judgment. Plaintiffs' failure to raise the claimed reputational injury until their reply to their summary judgment motion deprived Defendant of the ability to explain whether there is no genuine dispute of material fact as to whether Plaintiffs suffered any cognizable reputational injury proximately caused by Defendant's use of their image. Even so, summary judgment in favor of Defendant on Plaintiffs' false advertising claims was still appropriate even considering Plaintiffs' argument regarding reputational injury, as will be discussed.

The evidence Plaintiffs cited on summary judgment does not establish a triable issue as to whether Defendant's use of each of their images proximately caused Plaintiffs injury in the form of withheld trade from consumers. The fact that each of the Plaintiffs lost the revenue that she would have generated had Defendant "use[d] each Plaintiff's image in commerce without remuneration or consent" is not evidence that consumers withheld trade from Plaintiffs. (Doc. 76 at 13). Nor is their expert's opinion that models negotiate for higher premiums where being associated with a particular good or service might expose them to potential embarrassment. (Doc. 69-1 at 6, *cited in* Doc. 89 at 8). And finally, any potential concern of Defendant's strippers from being publicly associated with its strip club does not create a triable issue as to whether consumers withheld trade from Plaintiffs. The *Lexmark* Court made clear that a plaintiff asserting a false advertising claim "cannot obtain relief without *evidence* of injury proximately caused by [the] alleged misrepresentations," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." 572 U.S. at 133, 140.

Each of the Plaintiffs was required to bring forth evidence connecting Defendant's use of her respective image to any withheld trade from her. *Id.* at 140; *Dependable Sales & Serv., Inc.*, 377 F. Supp. 3d at 347–50; *cf. Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (dismissing claim where only allegation of injury was that defendants "engaged in false advertising by falsely claiming to be associated with the Trump organization . . . and this has somehow caused [p]laintiff to suffer damages"); *Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 JMF, 2014 WL 5493242, at *1–2, 5 (S.D.N.Y. Oct. 30, 2014) (dismissing claim for false advertising based on unauthorized use of model's image in fake dating profile on defendant's dating website—despite alleged injury to value of plaintiff's intellectual property—as plaintiff failed to allege facts supporting a connection between the use of model's image and any withheld trade from plaintiff by consumers). As noted, here, Plaintiffs and Defendant are not in the same market as they do not vie for the same dollars from the same consumers. Thus, the fact that each of the Plaintiffs failed to connect the use of her image to withheld

trade from her by consumers makes sense as "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation." *Lexmark*, 572 U.S. at 136. Plaintiffs' failure to cite any evidence that any consumers withheld trade from them precludes Plaintiffs' ability to prevail on their false advertising claims. *Id.* at 133, 140.

In fact, Defendant again raised that Plaintiffs cannot show proximate cause in opposition to the Motion for Reconsideration (Doc. 103). Specifically, Defendant noted that each of the Plaintiffs have not raised a triable issue as to proximate cause as none of the Plaintiffs have offered evidence that tends to show Defendant's use of each of their respective images caused consumers to withhold trade from her. (Doc. 105 at 5–8). Yet Plaintiffs did not file a reply in response to Defendant's opposition to the Motion for Reconsideration (Doc. 103), and thus, did not respond to this argument. This fact alone precludes relief on Plaintiffs' Motion for Reconsideration (Doc. 103) as Plaintiffs cannot prevail on their false advertising claim "without *evidence* of injury proximately caused by [the] alleged misrepresentations," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133, 140.

None of the Plaintiffs have shown a triable issue as to whether consumers withheld trade from her as a result of Defendant's use of her image. Bare assertions, without evidence, that each of the Plaintiffs meet the test under *Lexmark* do not create a material issue of fact as to whether she can obtain relief for false advertising for "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140; *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87. Summary judgment on Plaintiffs' false advertising claims was therefore appropriate. Relief based on the Motion for Reconsideration (Doc. 103) will therefore be denied for this reason as well.

## IV.   CONCLUSION

The Court will grant Plaintiffs' Motion for Reconsideration (Doc. 103) to the extent it has substantively addressed it. However, any relief from the Court's summary

judgment ruling in favor of Defendant on Plaintiffs' false advertising claims will be denied for the reasons discussed above.

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion for Reconsideration (Doc. 103) is **GRANTED** as described above but relief as to the ruling granting summary judgment on Plaintiffs' false advertising claims in favor of Defendant is **DENIED**.

Dated this 10th day of August, 2020.

James A. Teilborg
Senior United States District Judge